# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 02-3504

_____

| | | |
|---|---|---|
| Yohannes W. Habtemicael, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Petition for Review of an Order of |
| | * | the Board of Immigration Appeals. |
| John D. Ashcroft, Attorney General of the United States, | * | |
| | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: November 19, 2003
Filed: March 9, 2004

_____

Before MURPHY, LAY, and FAGG, Circuit Judges.

_____

MURPHY, Circuit Judge.

Petitioner Yohannes Habtemicael seeks asylum and withholding of deportation, as well as relief under the Convention Against Torture (Convention). The immigration judge denied relief, and the Board of Immigration Appeals affirmed without opinion. Habtemicael appeals. We affirm the denial of asylum and withholding of deportation, but we remand Habtemicael's claim under the Convention for further findings.

Yohannes Habtemicael was born in January 1965 in Asmara, Ethiopia. Asmara is today the capital city of Eritrea, now a nation of 3.9 million people located in the

Horn of Africa.  The territory making up Eritrea was part of Ethiopia from 1952 until 1993, but in 1962 revolutionary forces led by the Eritrean Liberation Front (ELF) began a war for independence.  In 1970 a Marxist/Leninist faction of the ELF formed the Eritrean People's Liberation Front (EPLF) which became the leading revolutionary movement in Eritrea by the mid1980s.  Habtemicael was a citizen of Ethiopia and was opposed to the EPLF on ideological grounds.

Habtemicael was hired by the Ethiopian Relief and Rehabilitation Commission (ERRC) in November 1984 to supervise children's feeding centers funded by the United Nations.  In the course of this work he was sent by the ERRC to Barentu, Ethiopia, a small town about 140 miles from Asmara, on May 23, 1985.  About six weeks later the EPLF attacked Barentu and defeated the Ethiopian forces. Habtemicael was forced by the EPLF to help with its wounded, to bury the dead, and to undergo political reeducation.  He and other able bodied men were also pressed into military service as replacements for fallen revolutionary soldiers.  From August 1985 to January 1986, Habtemicael underwent further political education and military training by the EPLF.  He was told by other captives that any sign of opposition to the EPLF would lead to severe torture, that any unarmed attempt to escape would be punished by underground imprisonment, and that any attempt to escape with a weapon could lead to summary execution.  Habtemicael resolved nevertheless to try to escape with his rifle.

On January 2, 1986, Habtemicael was collecting firewood some distance from the EPLF camp with twenty to thirty other men.  He had his rifle and a small amount of food and water with him, and he and two others decided to escape.  When EPLF guards realized that the three had disappeared, a group of soldiers pursued them.  The soldiers caught up with them after a few hours, and a gunfight ensued.  Two EPLF soldiers were killed, but Habtemicael and his companions were able to escape with their lives.  Traveling under cover of night, they fled into Sudan three days later.

Habtemicael moved to Saudi Arabia in 1989 because he feared EPLF sympathizers active in Sudan would find him if he remained there. After six years in Saudi Arabia, he was told that he would be deported unless he converted from Christianity to Islam. Because he feared retaliation for his actions against the EPLF if he were sent back to Eritrea, Ethiopia, or Sudan, Habtemicael obtained a tourist visa and fled to the United States. He entered this country on June 12, 1995 and secured a three year student visa soon after his arrival. Since then he has continued his education at Minneapolis Community College and maintained employment. He is an active member of his church and has never been arrested.

In 1991 the Ethiopian People's Revolutionary Democratic Front (EPRDF) overthrew the Ethiopian government. The United Nations sponsored peace negotiations between the EPRDF and Eritrea's EPLF in the early 1990s, which led to an internationally monitored referendum on Eritrean independence in 1993. Eritreans then voted overwhelmingly to secede from Ethiopia, and in 1993 the EPLF took control of the new Eritrean government and remains in power today, although it is now called the People's Front for Democracy and Justice. The United States recognized Eritrea as an independent sovereign nation on April 27, 1993.

Habtemicael alleges that if he were to be returned to Eritrea, it is probable that the government would persecute or torture him because of his ideological opposition to the EPLF, his escape in 1986, and his failure to make the payments required for expatriates to have an Eritrean identity card. Such a card signifies that its holder is a citizen in good standing who has fulfilled his military service requirement. If he were returned to Eritrea without an identity card, Habtemicael could be punished for failure to make the obligatory payments or conscripted into military service.

Habtemicael filed an affirmative application for asylum in this country on March 26, 1997, almost ten months before his student visa was to expire. He asserted that he had previously been the victim of political persecution by the EPLF and feared

further persecution if he were to return because it now controls the Eritrean government.

Habtemicael met with an asylum officer on March 10, 1998. The officer found that his involuntary recruitment by the EPLF had not been based on his political beliefs, but was simply due to his presence in Barentu when it was taken. Since Habtemicael had not yet presented evidence that the EPLF had records of his conscription or escape, the asylum officer assumed that the Eritrean government would probably be unaware of his past and would therefore be unlikely to persecute him in the future on account of his political opinion. His asylum application was denied.

Habtemicael's student visa expired January 25, 1998, and the Immigration and Naturalization Service (INS) initiated deportation proceedings on March 18, 1998. At his appearance before an immigration judge on May 26, 1998, Habtemicael conceded deportability. He again applied for asylum and withholding of removal based on past persecution and fear of future persecution on account of political opinion. At the invitation of the immigration judge, Habtemicael also added a request for relief under Article III of the Convention Against Torture.

In an oral decision on June 25, 1999, the immigration judge found Habtemicael ineligible for asylum because there was no evidence to suggest that the EPLF had abducted or pursued him on account of his political beliefs. Any future action taken by the Eritrean government to punish Habtemicael for his escape and for the killing of EPLF soldiers would be motivated by a desire to punish a military deserter rather than the desire to persecute an ideological opponent. The immigration judge also rejected Habtemicael's argument that any punishment for his failure to support the Eritrean government financially during his time in the United States would be persecution on the basis of imputed political opinion. His failure to pay what amounts to a tax on citizens living abroad would not be viewed as a political

statement, the judge concluded, and most likely Habtemicael would simply be conscripted into military service for not making the payments.

The immigration judge also found Habtemicael ineligible for relief under Article III of the Convention Against Torture. As the judge noted, the Convention defines torture to exclude pain or suffering arising from, inherent in, or incidental to lawful sanctions that do not otherwise defeat the purposes of the Convention. The pain or suffering inherent in a lawfully imposed death penalty is not considered torture under the Convention, and a government has authority to punish and even execute individuals who avoid conscription or desert military forces during wartime. The immigration judge concluded that prosecution and punishment of Habtemicael for his desertion from EPLF forces in 1986 would be a legitimate exercise of governmental power not prohibited by the Convention. Although the judge did not deny that Habtemicael "may have to answer for" his actions in 1986, he concluded that Habtemicael was not eligible for relief under the Convention. Habtemicael's alternative request for voluntary departure was denied because he did not possess any valid travel documents. Without such documentation, an alien cannot establish that he has the means to depart the United States and is therefore ineligible for voluntary departure.

Habtemicael appealed the immigration judge's rulings denying him asylum, withholding of deportation, and relief under the Convention. The Board of Immigration Appeals summarily affirmed without opinion. See 8 C.F.R. § 1003.1(a)(7) (2004). Habtemicael now appeals to this court.

We treat the immigration judge's opinion as that of the board when it has affirmed without a written opinion. Id.; Dominguez v. Ashcroft, 336 F.3d 678, 679 n.1 (8th Cir. 2003). The judge's findings of fact will be disturbed only if unsupported by substantial evidence. Francois v. INS, 283 F.3d 926, 931 (8th Cir. 2002). This court must defer to the immigration judge's findings of fact and disposition of the case

unless Habtemicael demonstrates that the record evidence was "so compelling that no reasonable factfinder could fail to find" him eligible for asylum, withholding of deportation, or relief under the Convention Against Torture. See INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992); 8 U.S.C. § 1252(b)(4)(B) (2004). Conclusions of law are reviewed de novo, with substantial deference to interpretations of statutes and regulations administered by the agency. Regalado-Garcia v. INS, 305 F.3d 784, 787 (8th Cir. 2002).

An alien who is otherwise deportable may be granted asylum if he demonstrates that he has a well founded fear that he will suffer persecution in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. § 1158(b) (2004) (Attorney General may grant asylum to refugees); 8 U.S.C. § 1101(a)(42)(A) (2004) (defining refugee). An alien who establishes that he has previously been the victim of persecution in the proposed country of removal is entitled to a rebuttable presumption that he would in the future be similarly persecuted in that country. 8 C.F.R. § 208.16(b)(1) (2004). An alien who can establish by a clear probability that he will be persecuted because of his political opinion qualifies for mandatory withholding of deportation. See 8 U.S.C. § 1253(h) (pre-IIRIRA provision);[1] INS v. Aguirre-Aguirre, 526 U.S. 415, 419 (1999). Because a greater degree of certainty must be shown by an applicant to qualify for mandatory withholding of deportation under § 1253(h) than for asylum under § 1158(b), an alien who fails to carry his burden of proof under §1158(b) will also fail under § 1253(h). See Janusiak v. INS, 947 F.2d 46, 47 (3d Cir. 1991).

---

[1]Because proceedings in this case began prior to April 1, 1997, amendments to the withholding provisions contained in the Illegal Immigrant Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104-208 (Sept. 30, 1996), codified at 7 U.S.C. § 1231(b)(3), do not apply. Fisher v. INS, 291 F.3d 491, 496 (8th Cir. 2002); Afolayan v. INS, 219 F.3d 784, 787 (8th Cir. 2000).

After studying the record we agree with the immigration judge that Habtemicael failed to demonstrate past persecution on account of his political beliefs. Even if the EPLF's program of impressing laborers and soldiers was motivated by its political ideology, that does not mean that Habtemicael was impressed on account of his political beliefs as required for relief under the asylum statute. See Elias-Zacarias, 502 U.S. at 482. Professor Harold G. Marcus, a distinguished professor of East African history at Michigan State University, testified at the immigration hearing on behalf of Habtemicael. He stated that the EPLF lost a lot of personnel in the mid1980s and was "desperate for manpower" when Habtemicael was abducted. Its criterion for forcing individuals into military service was simple: they sought men, and later women, with "two legs that could move." We conclude that there was substantial evidence in the record to support the immigration judge's finding that Habtemicael was abducted and pursued for reasons other than his political beliefs. Habtemicael is thus ineligible for a presumption of future persecution in Eritrea based on past political persecution in that area.

Habtemicael also failed to establish a well founded fear or clear probability that he would be persecuted for his political beliefs if returned to Eritrea. He testified that the Eritrean government would interpret his escape, the shooting of two EPLF soldiers trying to apprehend the escapees, and his lack of financial support as evidence of antiEritrean political sentiment. The immigration judge found that any adverse action which might be taken against Habtemicael by the Eritrean government would be on account of his desertion from the EPLF and the deaths of its soldiers, not on account of his politics. While Habtemicael might indeed be punished or conscripted for his failure to contribute money to the Eritrean government, that could not form the basis of an asylum claim because his failure to make payments did not by itself express a political opinion. If he were conscripted, it would be because he had not completed his military service requirement rather than because of his political beliefs.

Our review of the record shows that the immigration judge's finding that Habtemicael has no well founded fear of future persecution on the basis of his political beliefs is supported by substantial evidence. We conclude that the immigration judge did not err in finding Habtemicael ineligible for asylum under 8 U.S.C. § 1158(b) or for withholding of deportation under 8 U.S.C. § 1253(h).

Habtemicael's remaining claim arises under Article III of the United Nations Convention Against Torture. Article III of the Convention provides that a signatory country may not remove a person to another nation if there are "substantial grounds for believing that he would be in danger of being subjected to torture" in that nation. Foreign Affairs Reform and Restructuring Act of 1998 § 2242, Pub. L. No. 105-277 (Oct. 21, 1998). The United States has signed, ratified, and codified the Convention which became binding on it in November of 1994 upon delivery of ratifying documents to the United Nations.

The Convention is implemented in this country by 8 C.F.R. § 208.18. As relevant to this case it defines torture as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as . . . punishing him or her for an act he or she or a third person has committed . . . when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1) (2004). Torture does not include "pain or suffering arising only from, inherent in or incidental to lawful sanctions," including the death penalty, so long as those sanctions do not defeat the object and purpose of the Convention to prohibit torture. 8 C.F.R. § 208.18(a)(3). A sanction is only considered lawful if it is judicially imposed and otherwise authorized by law. Id.

Habtemicael contends that he would be unlawfully or extrajudicially executed as punishment for his actions in 1986 if returned to Eritrea, and that he may thus face a threat of imminent death proscribed by the Convention. The immigration judge recognized that Habtemicael could face sanctions for desertion or for the death of two EPLF soldiers if returned to Eritrea, but the judge concluded that prosecution on these grounds would be within the "recognized authority of a governmental entity" and would thus not amount to torture within the meaning of the Convention. Unlike the immigration judge's discussion of Habtemicael's asylum and withholding of removal claims, his brief analysis of the Convention claim was inadequate.

The immigration judge made no findings as to whether the EPLF had the status of a recognized government when Habtemicael was forced into its service in Barentu or whether it had the authority to impress an Ethiopian citizen into military service against the Ethiopian government. At the time Habtemicael was forced into involuntary service in 1985 and escaped from it in 1986, the EPLF was a revolutionary front fighting to become a recognized government independent of Ethiopia. The United Nations monitored referendum on Eritrean independence was not conducted until 1993, and the United States did not recognize Eritrea as a sovereign nation until May 27 of that year — more than seven years after Habtemicael's escape from the EPLF. Respondent asks this court to consider evidence that the EPLF had previously established a provisional government in some parts of Ethiopia, but the extent of its authority in 1985 and 1986 is a question for the immigration judge in the first instance, as is any legal consequence. The position taken by the executive branch of the government as to which entity has sovereignty over a disputed territory is relevant to the determination. See Baker v. Carr, 369 U.S. 186, 212 (1962). If the EPLF did not have sovereign authority in 1986, then Habtemicael as a citizen of Ethiopia may have acted lawfully in escaping and

defending himself against recapture. The sanction of death might therefore be a violation of the Convention Against Torture.[2]

Habtemicael would qualify for relief under the Convention only if he produced evidence showing that on his return, the Eritrean government or persons acting with its awareness and acquiescence, would more likely than not intentionally subject him to torture. 8 C.F.R. §§ 208.16(c)(2), 208.18 (a)(6)-(8). A petitioner must establish that he will probably be tortured, not merely that he will be punished in some way that does not amount to torture. See 8 C.F.R. § 208.18(a)(2). See also Peripanathan v. United States, 310 F.3d 594, 599 (8th Cir. 2002). An unlawful or extrajudicial threat of imminent death comes within the definition of torture if it is specifically intended to bring about prolonged mental pain or suffering. 8 C.F.R. §§ 208.18(a)(3), (a)(4)(iii), (a)(5). This intent requirement is satisfied if prolonged mental pain or suffering either is purposefully inflicted or is the foreseeable consequence of a deliberate act. Zubeda v. Ashcroft, 333 F.3d 463, 473 (3d Cir. 2003).

Whether Habtemicael produced evidence sufficient to support his claim that he would be unlawfully subjected to such a threat of imminent death by the Eritrean government is a question for the immigration judge to resolve.[3] Habtemicael testified

---

[2]Habtemicael also argues that any sanction for his actions in 1986 would be an ex post facto punishment in violation of international law. Cf. Landgraf v. USI Film Prods., 511 U.S. 244, 265 (1994) (ex post facto clause expresses universal principle that retroactive criminal sanctions are necessarily invalid); Universal Declaration of Human Rights, Art. 11(2), adopted Dec. 10, 1948, U.N. G.A. Res. 217 (III) ("No one shall be held guilty of any penal offense on account of any act . . . which did not constitute a penal offense . . . when it was committed."); Eritrean Const. Art. 18(2), ratified May 24, 1997 (expressing identical principle).

[3]Under IIRIRA's transitional rules which apply to aliens such as Habtemicael whose deportation cases were initiated prior to April 1, 1997, we must "decide the petition only on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A). Neither party here has suggested that conditions in Eritrea

that he was threatened with death if he attempted to escape from the EPLF and that he believes that this threat would be carried out if he returned to Eritrea. Professor Marcus testified that Habtemicael would "stick out" because he is young, lacks an Eritrean identity card and passport, and has no papers saying that he has been in the military making him automatically eligible for conscription. He stated that Eritrea's highly organized and centralized government would quickly discover Habtemicael's past and that he would likely face detention under harsh conditions, physical mistreatment, and an unfair and perhaps secret trial. Professor Marcus indicated that Habtemicael could be executed without judicial process, for at the time of his testimony Eritrean deserters in an ongoing border dispute were "being shot, period." In his judgment, "they are going to make him pay for what happened . . . in the eighties."

The immigration judge found the uncontradicted testimony of Habtemicael and Professor Marcus credible, and a petitioner's credible testimony alone can be sufficient to sustain his burden of proof. 8 C.F.R. § 208.16(c)(2); Zubeda, 333 F.3d at 471; Mansour v. INS, 230 F.3d 902, 907 (7th Cir. 2000). There is also documentary evidence in the administrative record that appears to support the testimony. See, e.g., U.S. Dept. of State, Bureau of Democracy, Human Rights, and Labor, Eritrea: Country Report on Human Rights Practices for 1998 at *2-4 (February 26, 1999) (Eritrean military authorities arbitrarily arrest and detain guerillas from the war for independence without formal charges or judicial process where they have been accused of violating the stringent unwritten code of military conduct; Eritrean security forces physically abused, beat, raped, and mistreated persons with impunity).

The immigration judge stated that there was no dispute that Habtemicael "may have to answer for his desertion from the EPLF military and . . . the shooting of EPLF soldiers while deserting," but summarily concluded that any punishment of

have changed since the administrative proceedings.

-11-

Habtemicael would be lawful and therefore not proscribed by the Convention. The regulations require that all evidence relevant to the possibility of future torture must be considered, 8 C.F.R. § 208.16(c)(3), but it does not appear that the judge considered evidence that the EPLF was not then a legitimate governmental authority, that any Eritrean sanction for the events in 1986 might therefore be unlawful, or that today a sanction could be imposed without judicial process. The immigration judge also did not reach the question of whether any punishment Habtemicael might receive would more likely than not subject him to a threat of imminent death that would violate the Convention. When an agency makes a finding of fact without mentioning or analyzing significant evidence, its decision should be reconsidered. Palavra v. INS, 287 F.3d 690, 693 (8th Cir. 2002) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). See also Hernandez v. INS, 258 F.3d 806, 814 (8th Cir. 2001) (remanding where board failed to consider evidence pertinent to asylum claim).

Without further factfinding we are unable to review the disposition of Habtemicael's Convention claim. See Palavra, 287 F.3d at 694 (case not ripe for appellate review where board did not consider facts pertinent to asylum claim). The immigration court is the proper forum to make factual determinations relevant to a claim under the Convention Against Torture. See INS v. Ventura, 537 U.S. 12, 17 (2002) (court of appeals committed clear error in not remanding to board for initial consideration of factual questions relevant to immigration case). One of the other cases in which the immigration judge did not fully consider the record on a claim under the Convention was remanded by the Third Circuit "to allow clarification of the record and an opportunity for any additional fact finding or evidence that may be necessary." Zubeda, 333 F.3d at 479. A remand to the board is also appropriate in this case so that additional findings can be made with respect to Habtemicael's Convention claim. See id. at 478; Mansour, 230 F.3d at 909 (remand necessary where board failed to consider evidence pertinent to Convention claim).

Accordingly for the reasons stated, we affirm the board's order denying Habtemicael's claims for asylum under 8 U.S.C. § 1158(b) and for withholding of deportation under 8 U.S.C. § 1253(h). We vacate that part of the board's order denying Habtemicael's claim for relief under Article III of the Convention Against Torture and remand for further findings as to whether Habtemicael is more likely than not to suffer torture within the meaning of the Convention if returned to Eritrea.

_____