# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1675

_____

Jawahir B. Aden,                                    *
                                                    *
          Petitioner,                               *
                                                    *   Petition for Review of an
     v.                                             *   Order of the Board of
                                                    *   Immigration Appeals.
John Ashcroft,                                      *
                                                    *
          Respondent.                               *

_____

Submitted:  June 14, 2004
Filed:  February 3, 2005

_____

Before LOKEN, Chief Judge, HEANEY and MELLOY, Circuit Judges.

_____

LOKEN, Chief Judge.

     Petitioner Jawahir Barre Aden is a native of Somalia. Aden and her three children entered the United States illegally from Kenya, using fraudulent documents provided by a smuggler. Conceding she is removable, see 8 U.S.C. § 1227(a)(1)(A), Aden applied for asylum, for withholding of removal, and for relief under Article 3 of the Convention Against Torture for herself and the children. After an evidentiary hearing, the Immigration Judge ("IJ") denied all relief in a thorough opinion. Aden appealed the IJ's decision, and the Board of Immigration Appeals affirmed without opinion. Aden now petitions this Court for judicial review. We have jurisdiction to

review the agency's final order of removal. <u>See</u> 8 U.S.C. § 1252.[1]  We deny the petition for review.

## I. Background.

At the hearing, Aden testified that she and her family belong to the small Tunni clan and lived on a farm in Bardhere, Somalia.  In January 1991, dictator Said Barre fled the country, and roving bands of clan-based militia began fighting for power and looting and pillaging defenseless non-combatants.  Aden testified that five armed men broke into her family's home in April.  One man slapped Aden and then raped her.  Another shot and killed her brother.  Aden's mother was kicked while trying to protect her sister.  The home was looted.  Aden did not know the men but believes they were members of the large Hawiye clan.  Aden and some family members fled to Kenya, where she lived in various refugee camps for many years, marrying twice and giving birth to the three children.  Aden has not had contact with members of her family for many years but believes they have returned to Somalia.

The IJ found Aden ineligible for asylum on alternative grounds.  First, the IJ found Aden's testimony not credible because it was vague and totally uncorroborated, and because her hearing testimony describing the attack on Aden and her family was inconsistent in significant respects with her account in the written asylum application (Form I-589) and with the story she told the asylum interview officer some months before the hearing.  Second, the IJ found that Aden did not establish that she applied for asylum within one year of arriving in the United States, as the asylum statute requires.  Third, the IJ found that Aden failed to prove past persecution, that is, harm

---

[1]When the Board affirms without opinion, the IJ's decision becomes the final agency action for purposes of judicial review.  <u>See</u> 8 C.F.R. § 1003.1(e)(4)(ii); <u>Al Tawm v. Ashcroft</u>, 363 F.3d 740, 743 (8th Cir. 2004).  Aden argues that the Board failed to follow its own regulations in affirming without opinion.  We do not review that internal agency procedure. <u>Ngure v. Ashcroft</u>, 367 F.3d 975, 988 (8th Cir. 2004).

suffered "on account of" a protected ground such as membership in the Tunni clan. Fourth, based upon recent Department of State reports regarding Somalia, the IJ found that Aden does not have a well-founded fear of future persecution on account of a protected ground if she returns to that civil war-torn country. Having found that Aden failed to meet the lower burden of proof for asylum, the IJ also found her ineligible for withholding of removal or relief under the Convention Against Torture.

## II. Discussion.

**Asylum.** To be eligible for asylum, an alien must demonstrate by clear and convincing evidence that she filed an application for asylum within one year of arriving in the United States. 8 U.S.C. § 1158(a)(2)(B). Aden testified that she arrived in the United States on June 1, 1999, at Chicago, Illinois. She submitted the asylum application that fall. The IJ found that Aden failed to meet this requirement because she "provided no objective documentation to prove she arrived in the U.S. on June 1, 1999," and "her cousin testified that the cousin had been helping [Aden] for 1 ½ to 2 years in Minnesota and that [Aden] lived in Milwaukee before coming to Minnesota." Accordingly, the IJ denied the application for asylum on this ground.

On appeal, Aden argues that the IJ erred in making this determination because her testimony on this issue was credible. However, the statute expressly provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General under" § 1158(a)(2). 8 U.S.C. § 1158(a)(3). As the finding that Aden failed to meet the one-year requirement is a "determination of the Attorney General under" § 1158(a)(2), that determination is not subject to judicial review. Ismailov v. Reno, 263 F.3d 851, 855 (8th Cir. 2001). Accordingly, we may not overturn the denial of Aden's application for asylum.

**Withholding of Removal.** To qualify for withholding of removal to a specific country such as Somalia, an alien must show a clear probability that her "life or

freedom would be threatened in that country" because of her race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A). "Withholding of removal involves a higher degree of certainty that persecution will occur than that required for asylum eligibility." Al Tawm v. Ashcroft, 363 F.3d 740, 744 (8th Cir. 2004).

The IJ found Aden's testimony not credible. Findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). In particular, an IJ's credibility finding is entitled to much weight, and we defer to that finding if it "is supported by a specific, cogent reason for disbelief." Perinpanathan v. INS, 310 F.3d 594, 597 (8th Cir. 2002) (quotation omitted). Here, the IJ found Aden not credible based largely on the absence of corroborating evidence and several material inconsistencies between her testimony, her asylum application (Form I-589), and the asylum officer's interview notes. For example, Aden testified that she was raped when a group of men invaded her home in April 1991. Her Form I-589 described a similar attack on the home but in a different year, with different people present and a different rape scenario. The asylum officer's written interview assessment related a different story (which the officer found not credible) of family members running out of gas while fleeing Bardhere in a car, and the women in the group walking to a small village where a group of men raped and threatened to kill them. After careful review of the administrative record, we conclude that the IJ's adverse credibility finding is supported by "specific, cogent reasons" for disbelief. That finding means that Aden is ineligible for asylum because she failed to prove a well-founded fear of future persecution on account of a protected ground, and thus she failed to meet the more onerous standard for withholding of removal to Somalia. See Habtemicael v. Ashcroft, 370 F.3d 774, 780 (8th Cir. 2004).

**The Convention Against Torture.** An alien is eligible for relief under the Convention Against Torture if she shows "that it is more likely than not that . . . she would be tortured if removed to the proposed country of removal." 8 C.F.R.

§ 208.16(c)(2). Torture is narrowly defined as an extreme form of cruel and inhuman treatment intentionally inflicted by or with the acquiescence of a person acting in an official capacity. 8 C.F.R. § 208.18(a). In some cases, a claim for relief under the Convention Against Torture may require separate analysis by the agency even if the alien is ineligible for asylum and withholding of removal. For example, in Habtemicael, we remanded only the Convention Against Torture claim because the alien presented evidence that he might be executed for deserting the military if he was removed to his native country. 370 F.3d at 781-83. But here, Aden presented no such evidence. Thus, the IJ's adverse credibility finding is fatal to her claim under the Convention Against Torture as well. See Perinpanathan, 310 F.3d at 599.

The petition for review is denied.

HEANEY, Circuit Judge, concurring.

I concur in the majority's thoughtful opinion. I write separately to indicate my concerns regarding the record presented to this court, and to underscore that our decision is not intended to trivialize the plight of minority clan members in Somalia.

I must agree that Aden's statements at various times were inconsistent and that these inconsistencies gave the immigration judge ("IJ") "specific, cogent reason[s]" to find her testimony not credible. Perinpanathan v. INS, 310 F.3d 594, 597 (8th Cir. 2002) (quoting Ghasemimehr v. INS, 7 F.3d 1389, 1391 (8th Cir. 1993)). It would have been very helpful had the IJ taken the time at the hearing to attempt to resolve

the inconsistencies. Unfortunately, she imposed rather severe time limitations on the proceedings,[2] and Aden never was able to reconcile her differing accounts of persecution.

Aden's testimony before the IJ was that her brother was killed and she was beaten and raped during a home invasion at her family residence in Bardhere.[3] She asserted that this occurred because of her membership in the minority Tunni clan. In an earlier interview with an asylum officer, Aden claimed that she and her family fled Bardhere by car, but that the vehicle ran out of gas about forty kilometers out of town. She stated to the officer that she and others then traveled to a nearby village, where she was beaten and raped on account of her clan membership. The asylum officer's handwritten and typewritten notes indicate nothing about the home invasion, a rape in Bardhere, or the death of Aden's brother. Prior to this interview, however, Aden filed a written asylum application that stated she was beaten and raped at her family's home in Bardhere by militiamen because of membership in the Tunni clan. Aden did not mention the murder of her brother in this application.

Had Aden been able to prove any of these stories, she would qualify for relief. If she was raped and beaten due to her membership in a minority clan, and if her brother was murdered for similar reasons, she certainly would have established that she was eligible for withholding of removal. See 8 U.S.C. § 1231(b)(3)(A) (stating that the attorney general may not generally remove an alien to a country where the alien's life or freedom would be threatened due to membership in certain protected

_____

[2]Although I recognize that efficiency is an important asset to IJs due to the number of cases that they handle, it is also important to provide asylum applicants, who may be subject to persecution or even death if returned to their home countries, a fair opportunity to present their cases.

[3]Although the spelling of this city varies throughout the record, I will accept the IJ's use of this spelling in her decision and follow suit.

classes). Unfortunately, the record does not provide any reasonable explanation for Aden's markedly inconsistent stories. First, Aden filed her asylum application, which detailed the rape and home invasion; next, in her asylum interview, she changed her narrative entirely, claiming instead she was sexually assaulted during the family's flight from their home; finally, at the hearing, she reverted to a version that approximated her original account, but supplemented it with the assertion that her brother was murdered during the episode. Given these discrepancies, I cannot fault the IJ for finding Aden not credible. Accordingly, I concur in the majority opinion.

_____