# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2477

_____

Jose Angamarca,

           Petitioner,

v.

Alberto Gonzales, Attorney General
of the United States of America,[1]

           Respondent.

\*
\*
\*
\*
\*   Petition for Review of an
\*   Order of the United States
\*   Board of Immigration Appeals.
\*
\*
\*

_____

Submitted: June 24, 2005
Filed: July 25, 2005

_____

Before MELLOY, HEANEY, and GRUENDER, Circuit Judges.

_____

HEANEY, Circuit Judge.

Jose Angamarca, a native and citizen of Ecuador, petitions for review of a decision of the Board of Immigration Appeals (BIA) affirming without opinion the Immigration Judge's (IJ) decision denying Angamarca's petition for asylum, withholding of removal, and protection under the Convention Against Torture (CAT), and denying his application for cancellation of removal and adjustment of status

_____

[1]Alberto Gonzales has been appointed to serve as Attorney General of the United States, and is substituted as appellee pursuant to Federal Rules of Appellate Procedure 43(c).

pursuant to the Special Rule for a Battered Spouse or Child. Angamarca claims that the IJ erred in concluding that his fear of future persecution was not well-founded, failing to make specific findings regarding Angamarca's credibility, and not allowing him to testify to the hardship he would suffer by being separated from his girlfriend's autistic son. We dismiss Angamarca's asylum claim, because we lack jurisdiction to review the decision that the asylum application was untimely, and deny Angamarca's remaining claims.

## BACKGROUND

Angamarca entered the United States near San Diego in March of 1994 without being admitted or paroled after inspection by an immigration officer. He met and married a United States citizen in 1996; she filed a visa petition on his behalf the same year. In December of 1997, Angamarca returned to Ecuador. On January 21, 1998, he was paroled back into the United States for a one-year period to pursue his application for adjustment of status. Angamarca's visa petition was denied May 11, 1998 because the Immigration and Naturalization Service (INS) concluded that Angamarca was not in a bona fide marital relationship. The INS then commenced removal proceedings, charging Angamarca with being a removable alien. Angamarca conceded removability, and in September 2002, petitioned for asylum, relief under the CAT, cancellation of removal under the special rule for a Battered Spouse or Child, and permission to depart voluntarily.

Angamarca's asylum claim is based on his affiliation with the Populist Rodolist (PRE), the second largest political party in Ecuador. Angamarca testified that his family publicly supported the presidency of Abdala Bucaram-Ortiz by hosting meetings, participating in marches, and distributing campaign materials in their hometown. After Bucaram-Ortiz was removed from office, the family was targeted by local members of an opposition political party, the Social Christian Party. The windows in the family home were broken, Angamarca's aunt and uncle were beaten,

and his parents were verbally harassed. Angamarca testified that he was also a target, and that the local opposition wanted him dead because of his support for the President.

Angamarca testified that during his one-month visit to Ecuador in December of 1997, he encountered a group of opposition supporters, who threw bottles at him. He fled the area and was unharmed. State Department Country Condition Reports referenced by the IJ indicate that Bucaram-Ortiz was president of Ecuador from July 1996 to early 1997. The IJ noted that the PRE is a legal political party, that citizens of Ecuador elect their leaders in regular free and fair elections, and that the PRE is currently the second largest party in the Ecuadoran parliament. Angamarca's parents and three siblings continue to live and farm in the same village in Ecuador.

Angamarca testified that his wife began drinking heavily and abusing drugs in 1997. They had frequent arguments, and she became verbally abusive. On one occasion, she threw a vase at him, and on another, hit him in the back with an alarm clock. Finally, Angamarca learned through friends that his wife had arrived at the house with a gun and said she was going to kill him. Angamarca was not at the house at the time. Angamarca stated that he felt too humiliated to report any of these incidents to the police or medical workers. He did not submit any corroborating evidence for his claims in the form of official records, and supporting affidavits from his friends make no mention of these incidents.

The IJ concluded that Angamarca's application for asylum was not timely, that he had not suffered past persecution as a result of his political beliefs, and that he was not credible regarding his wife's abuse. The IJ noted the lack of corroborating evidence for his claims and the INS's prior conclusion that his marriage was a sham. The IJ therefore denied each of Angamarca's claims. Angamarca appealed to the BIA, which affirmed the decision without opinion. The IJ's decision is the final

agency determination for purposes of judicial review.  <u>Aden v. Ashcroft</u>, 396 F.3d 966, 967 n.1 (8th Cir. 2005).  This appeal followed.

## ANALYSIS

### I. Asylum

Angamarca contends that the IJ failed to make specific findings regarding Angamarca's credibility and erred in concluding that his fear of future persecution was not well-founded.  An application for asylum may not be considered unless it is filed within one year of an alien's arrival in the United States, or the alien demonstrates changed circumstances materially affecting eligibility for asylum, or that the delay in filing was related to extraordinary circumstances. 8 U.S.C. § 1158(a)(2)(B), (D).  The IJ concluded that Angamarca's asylum application was not timely, and this court does not have the power to review that determination.  8 U.S.C. § 1158(a)(3).

Although we lack the jurisdiction to review Angamarca's claim for asylum, we have jurisdiction to review the denial of Angamarca's requests for withholding of removal and protection under the CAT.  <u>See</u> <u>Ngure v. Ashcroft</u>, 367 F.3d 975, 989 (8th Cir. 2004).  To qualify for withholding of removal, Angamarca bears the burden of showing that his life or freedom would be threatened in Ecuador on account of his political opinion.  8 U.S.C. § 1231(b)(3)(A).  He must establish that it is "more likely than not that he will suffer persecution" on his return to Ecuador.  <u>Ngure</u>, 367 F.3d at 989.   To qualify for protection under the CAT, Angamarca must show that it is "more likely than not" that he would be tortured if he returned to Ecuador.  8 C.F.R. § 1208.16(c)(2).

After reviewing the record, we are persuaded that Angamarca has not demonstrated that it is more likely than not that his life or freedom would be

-4-

threatened in Ecuador, or that he is likely to be subjected to torture. Angamarca did not personally suffer any detention or serious violence. He described a single incident in which supporters of a rival political party threw bottles at him. While Angamarca testified to one death threat directed against him, he offered no testimony that he, his family, or other party members had actually been targets of assassination attempts or any further threats. Angamarca himself felt sufficiently comfortable in the area that he stayed in the village for nearly a month in 1997. While his family was subject to some harassment, these incidents were also not serious enough to rise to the level of persecution. Rocks were thrown through a window in the family home, and his aunt and uncle were attacked. Despite these incidents, the family has not found it necessary to leave the area, and continues to farm the land they own in the village. See Wondmneh v. Ashcroft, 361 F.3d 1096, 1098 (8th Cir. 2004) (noting that fear of persecution is less likely to be reasonable if family members have remained in the native country unharmed). Harassment of family members may be relevant to establish well founded fear of persecution, but evidence of isolated violence without more is not sufficient. Nyonzele v. INS, 83 F.3d 975, 983 (8th Cir. 1996). This court has consistently distinguished between low-level harassment and intimidation, such as that experienced by Angamarca and his family, and persecution. See Shoaira v. Ashcroft, 377 F.3d 837, 844 (8th Cir. 2004). Because Angamarca has not shown that he is eligible for asylum, he also has not met the heightened standard required for withholding of removal, or the even higher standard for eligibility for relief under the CAT.

## II. Cancellation of Removal

Angamarca also claims that he is eligible for cancellation of removal as the battered spouse of a United States citizen. An alien is eligible for cancellation of removal as a battered spouse if the alien: (1) has been battered or subjected to extreme cruelty in the United States by a spouse or parent who is a United States citizen or lawful permanent resident; (2) has been continuously physically present in

-5-

the United States for at least three years; (3) is a person of good moral character ; (4) is not inadmissible due to the commission of specified crimes; and (5) the removal would result in extreme hardship to the alien, the alien's child, or to the alien's parent. 8 U.S.C. § 1229b(b)(2).

The IJ rejected Angamarca's claim that he was battered or subjected to extreme cruelty, noting that Angamarca submitted no police or medical records, and no witness statements that would support or corroborate his claims. Because Angamarca entered into a sham marriage, the IJ concluded that Angamarca would be willing to misrepresent his relationship in order to remain in the United States. These facts, which are supported by the record, constitute a reasonable basis for the IJ's adverse credibility finding. See Perinpanathan v. INS, 310 F.3d 594, 597 (8th Cir. 2002) (recognizing an IJ's decision is due deference from the court where it is supported by specific, cogent reasons for disbelief). Although Angamarca argues that the IJ's credibility findings were vague and not supported by the evidence, he offered no evidence of battery or extreme cruelty other than his own testimony. We therefore conclude that the IJ did not err in finding that Angamarca did not establish that he was subject to battery or extreme cruelty.[2]

---

[2]Angamarca argues that he should be granted cancellation of removal on the basis of his close relationship with his girlfriend's autistic son. Under the current rules for cancellation of removal, this relationship cannot serve as a basis for granting relief to Angamarca. See 8 U.S.C. § 1229b(b)(1)(A) (permitting cancellation of removal only when an alien has been continuously physically present in the United States for a period of at least ten years); 1229b(b)(2)(a) (permitting cancellation of removal only when an alien has demonstrated that he or she has been battered or subject to extreme cruelty by a spouse or parent who is a United States citizen).

**CONCLUSION**

Angamarca has not shown that he was subject to battery or extreme cruelty by his spouse, and is therefore not eligible for cancellation of removal. Angamarca has not shown that he suffered past persecution that would justify granting his asylum claim or withholding of removal. We therefore affirm the denial of cancellation of removal, withholding of removal, and protection under the CAT.

_____