# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1594

_____

Helen Adaeze Obah,                              *
                                                *
                Petitioner,                     *
                                                *    Petition for Review of an
        v.                                      *    Order of the Board of
                                                *    Immigration Appeals.
Alberto Gonzales, Attorney General              *
of the United States of America,                *    [UNPUBLISHED]
                                                *
                Respondent.                     *

_____

Submitted: June 14, 2007
Filed: June 20, 2007

_____

Before BYE, RILEY, and BENTON, Circuit Judges.

_____

PER CURIAM.

        Helen Adaeze Obah, a Nigerian, entered the United States without inspection. The government began removal proceedings in 2001. After four evidentiary hearings, the immigration judge denied asylum, withholding of removal, and relief under the Convention Against Torture, ordering her removed to Nigeria. The Board of Immigration Appeals affirmed the IJ, dismissing Obah's appeal. This court affirms.

I.

The government argues that "this court lacks jurisdiction to consider whether petitioner is eligible for asylum." "To be eligible for asylum, an alien must demonstrate by clear and convincing evidence that she filed an application for asylum within one year of arriving in the United States." *Aden v. Ashcroft*, 396 F.3d 966, 968 (8th Cir. 2005). *See* 8 U.S.C. §§ 1158(a)(2)(B). Obah filed for asylum on February 11, 1999 – the issue is when she arrived in the United States. Obah claims she arrived on January 29, 1999. But the IJ found her "utterly incredible," and her accounts of entry into the United States are inconsistent and unsupported:

> In her written statement, she's dressing up like a man to leave [Nigeria]. In her testimony in Court she can't recall doing that. We have no tickets, no boarding passes, no luggage claims, no travel documents for certain, to show how respondent left Nigeria and came to the United States. We simply have the mysterious Madam Coker who apparently handled all the arrangements. The respondent entered in a van, using a Nigerian passport. She was never questioned. The Court finds claims such as these to be very questionable.

The IJ concluded: "The Court does not believe that the respondent has met her burden of proof with the documentation and testimony offered. . . . the absence of solid documentary proof of her entry is a further bar to her receiving asylum."

Like the petitioner in *Aden*, Obah claims her testimony on this issue was credible, and that the IJ erred. But section 1158(a)(3) is clear: "no court shall have jurisdiction to review any determination of the Attorney General under" section 1158(a)(2). The IJ's finding that Obah failed to meet the one-year requirement is a "determination of the Attorney General under" section 1158(a)(2)(B). Therefore, this court lacks jurisdiction to consider her asylum claim. *See Aden*, 396 F.3d at 968.

## II.

Obah does not qualify for withholding of removal, or relief under the Convention Against Torture.

Withholding of removal is available "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3). "The standard for mandatory withholding of removal is stringent, a 'clear probability that he or she will face persecution in the country to which he or she will be deported.'" *Ruzi v. Gonzales*, 441 F.3d 611, 614-15 (8th Cir. 2006) (quoting *Eta-Ndu v. Gonzales*, 411 F.3d 977, 986 (8th Cir. 2005)). "Under this standard, the petitioner must show that 'more likely than not' he or she would be subjected to persecution on account of one (or more) of the statutory grounds." *Id.* at 615.

"If the immigration judge determines that the alien is more likely than not to be tortured in the country of removal, the alien is entitled to protection under the Convention Against Torture." 8 C.F.R. 1208.16(c)(4). The alien bears the burden of proof for CAT protection. 8 C.F.R. 1208.16(c)(3).

Obah testified she was persecuted and tortured in Nigeria in the 1990s for opposing the military government of General Sani Abacha. Specifically, Obah claims she was arrested four separate times for engaging in pro-democracy activities, and while in custody was beaten, repeatedly gang-raped, and otherwise abused by her captors, who worked for the government. She fears the same treatment if returned.

As the final agency decision, the Board's order is the subject of this court's review. *Ismail v. Ashcroft*, 396 F.3d 970, 974 (8th Cir. 2005). Because the Board adopted the IJ's findings, this court also reviews the IJ's decision and order as part of the final agency decision. *Id.* This court affirms a decision supported by "reasonable,

substantial, and probative evidence." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). "To reverse the BIA finding we must find that the evidence not only *supports* that conclusion, but *compels* it." *Id.* at 481 n.1 (emphasis in original). In other words, the Board's factual findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). This court reviews the Board's legal conclusions de novo, but defers to its interpretation of the Immigration and Nationality Act. *See Nyirenda v. INS*, 279 F.3d 620, 623 (8th Cir. 2002).

This court agrees with the IJ: "If the respondent had been subjected to the abuse she described in her testimony and in some of her documents, the Court would very likely grant her relief." This court also agrees that "[t]he real issues in this case entirely turn on [Obah's] credibility."

The IJ found Obah "utterly incredible." Obah offered purported membership cards for several political organizations, as well as photocopies of a Nigerian police wanted poster and a criminal recognizance issued for her by the police. After commenting on "some very definite similarities between the typed [sic] used on all of the respondent's political identity cards and the Nigerian police documents," the IJ found it "utterly implausible that one office would issue identity cards for three different political organizations." One card misspells the word "bearer." The wanted poster "uses the old style of type used on 'old west' wanted posters," and "the word military in the middle of the page is spelled with two L's." A handwritten statement from Obah also misspells "military" with two Ls. The poster also misspells the words "Nigerian" (N-I-G-I-R-I-A-N) and "physical" (P-H-I-S-I-C-A-L), leading the IJ to describe it as "an extremely shaky document." Oddly, the criminal recognizance identifies Obah as the complainant and the government of Nigeria as the defendant, using "similar type face to all the previously mentioned documents" and misspelling "military" with two Ls. The IJ viewed the recognizance as "another fraudulent document prepared on the same typewriter as the political cards." The Department of Homeland Security's Forensic Document Laboratory concluded that Obah's

documents "could not be effectively authenticated" and "should be considered suspect." Describing the poster and the recognizance as "just laughable," the IJ concluded that "this Court has every reason to believe that this respondent phonied up these documents herself."

The documents' origin is similarly dubious. First, Obah testified that a friend went to Obah's husband's house in Lagos, retrieved "all the documents I brought [to the hearing]," and gave them to her before she left Nigeria in January 1999. At the second hearing, Obah testified that she got the wanted poster and the criminal recognizance from someone named "Bukky" or "Bukola," who traveled to Nigeria and retrieved these documents for Obah. The IJ was appropriately skeptical about "the ubiquitous Bukky":

> [S]ome person that the respondent just happened to run into at the Mall of America, and who was willing to travel back to Nigeria to obtain documents or information for the respondent. The mysterious nature of this person, including her never leaving means for the respondent to contact her, or a last name to assist in locating her, indicates just what a preposterous story this is.

At the third hearing, Obah testified that another friend gave her the photocopy of the recognizance before she left Nigeria. None of these people testified.

Obah produced a facsimile copy of a letter confirming her membership in the Campaign for Democracy. The IJ is justified in concluding that "the flaming fraud of the documents discussed previously [membership cards, wanted poster, criminal recognizance], heavily outweighs the one document that she has presented that has any hope of validity." *See, e.g.*, *Sterkaj v. Gonzales*, 439 F.3d 273, 277 (8th Cir. 2006) ("An applicant's presentation of a fraudulent document to prove a central element of the claim in an asylum adjudication . . . in the absence of an explanation regarding such presentation[] creates serious doubts regarding the [applicant's] overall

-5-

credibility. [S]uch fraud tarnishes [the applicant's] veracity and diminishes the reliability of his other evidence.") (citations omitted) (brackets in original).

The IJ "is in the best position to make credibility findings because he [or she] sees the witness as the testimony is given." *Gemechu v. Ashcroft*, 387 F.3d 944, 947 (8th Cir. 2004). For this reason, "we defer to the IJ's credibility finding when it is supported by specific, cogent reasons for disbelief." *Onsongo v. Gonzales*, 457 F.3d 849, 852 (8th Cir. 2006) (citing *Eta-Ndu*, 411 F.3d at 982). Here, the IJ's credibility finding is supported by many specific, cogent reasons to doubt Obah's credibility. Obah's "inconsistent testimony" and "suspect corroborating evidence" support the IJ's finding. *See id.* at 853. Far from thinking that "a reasonable factfinder would be compelled by the record to credit the disputed testimony," this court finds the IJ's decision persuasive. *See id.*

Obah offered testimony from Dr. Patricia Shannon with the Center for Victims of Torture. On appeal, Obah complains that "the IJ completely disregarded the photographs of Obah's scars/injuries, the CVT reports concerning her psychological problems and the torture she suffered, and Dr. Shannon's testimony." The photographs show that Obah has scars on her body and is missing a tooth – they do not prove the cause was torture. The information contained in the reports, and the testimony of Dr. Shannon, are based on statements made by Obah herself. Obah's "overall credibility" is tarnished by the "flaming fraud" of her other documents. *See Sterkaj*, 439 F.3d at 277.

III.

The judgment of the Board is affirmed.

_____

-6-