# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1493

_____

| | | |
|---|---|---|
| Manuel Admin Chay-Velasquez, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an |
| v. | * | Order of the Board of |
| | * | Immigration Appeals. |
| John Ashcroft, Attorney General | * | |
| of the United States, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: March 11, 2004

Filed: May 6, 2004

_____

Before MURPHY, SMITH, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Petitioner Chay-Velasquez, a native of Guatemala, seeks political asylum, withholding of removal, and relief under the Convention Against Torture (Convention). The Immigration Judge (IJ) denied relief on the grounds that Chay-Velasquez had committed serious nonpolitical crimes in Guatemala prior to his illegal entry into the United States and that he was ineligible for relief under the Convention. The Board of Immigration Appeals (Board) affirmed the IJ's order without opinion. Chay-Velasquez petitions for review.

Chay-Velasquez is a young man of Mayan descent. His mother was killed in September 1980 when he was eight months old, and he was placed in an orphanage in Guatemala City where he remained until he turned twelve. His father is believed to be dead. In 1992 he went to live with relatives in the coastal city of San Lucas Toliman where he attended school. His father's brothers, Felix and Martin Gomez, had received asylum in the United States in 1989, and they provided financial support to him. In 1994 he returned to Guatemala City, where he worked as a carpenter's apprentice and later in a garment factory while attending high school. During this time he had sporadic contact with his relatives and lived with friends under a bridge.

In 1995 Chay-Velasquez became active in a student group that participated in actions against the government. It protested privatization and supported indigenous rights, but had no name or formal organization. The group never elected officers, published or distributed leaflets, made demands on the government, or affiliated with any political party, but it frequently took part in demonstrations. The group marched in protest, burned buses, and broke windows on government buildings. It also fought with the police, and Chay-Velasquez made bottle bombs to throw at them. Although he claims he was followed by security officers for two years, he was never detained or interrogated by the authorities in Guatemala. His involvement in protest activities ended in the spring of 1998, and he received his high school diploma in November 1998.

Chay-Velasquez attempted to enter the United States near Douglas, Arizona on March 19, 1999. He was apprehended and placed in detention, served with a notice to appear, and then released to his uncles in St. Paul, Minnesota. At a hearing on August 4, 1999 he conceded removability, but sought asylum, withholding of removal, protection under the Convention, or voluntary departure. The record was closed on December 5, and an individual hearing was held on December 15, 1999 at which Chay-Velasquez and his uncles testified. The IJ denied the application for asylum, withholding of removal, and protection under the Convention, but Chay-

Velasquez was granted voluntary departure. Since the Board affirmed without opinion, we treat the IJ's decision as the agency's final determination. See Dominguez v. Ashcroft, 336 F.3d 678, 679 n.1 (8th Cir. 2003).[1]

In an oral decision, the IJ found that Chay-Velasquez was generally credible but failed to establish that he was subject to past persecution. He observed that Chay-Velasquez had never been arrested, detained, interrogated, or otherwise harmed by the Guatemalan government. What Chay-Velasquez described as protest actions were more like riots according to the IJ. The judge also found that Chay-Velasquez's group had engaged in criminal activity; it had destroyed public property and placed "public safety at risk when buses were burned and government buildings were attacked."[2] Referencing INS v. Aguirre-Aguirre, 526 U.S. 415 (1999), the IJ found that the criminal nature of Chay-Velasquez's acts outweighed the political because they were "actions of exceptional destruction and violence." Although protests against high bus fares and the failure to investigate disappearances touched on important political and social issues in Guatemala, burning civilian buses was not a direct attack upon government activities. The IJ found Chay-Velasquez had been involved in acts of anarchy rather than in genuine political protest. Because he had committed serious nonpolitical crimes prior to entering the United States, the IJ concluded that Chay-Velasquez was not eligible for asylum or withholding of removal.

---

[1]Chay-Velasquez also claims error in the Board's failure to provide review by a three member panel and its summary affirmance without opinion. A streamlined review process for immigration cases is not unconstitutional, see Nyama v. Ashcroft, 357 F.3d 812, 817 (8th Cir. 2004) (citing Loulou v. Ashcroft, 354 F.3d 706, 708-09 (8th Cir. 2003) (no constitutional or statutory right to an administrative appeal)), and the Board's decision to streamline was not error.

[2]At his hearing, Chay-Velasquez testified: "The thing is that the strikes were not done peacefully. They were very brutal, so I would say, come on, let's go, let's burn buses, and we would burn buses and [pickup] trucks."

The IJ concluded that there was insufficient evidence to show that the Guatemalan government knew of Chay-Velasquez's involvement in protest demonstrations and that even if it were to prosecute him for his activities, it would not constitute torture under the Convention. The IJ granted him voluntary departure.

On his petition for review Chay-Velasquez argues that the IJ erred by failing to consider all of the evidence, that he did not commit serious nonpolitical crimes, and that he is eligible for relief under the Convention. In addition he contends that the IJ abused his discretion by refusing to allow supplemental materials. The Attorney General counters that there is substantial evidence to support the IJ's finding that Chay-Velasquez had committed serious nonpolitical crimes prior to entering the United States. He also argues that Chay-Velasquez waived any claim to relief under the Convention and that the IJ did not abuse his discretion by refusing to admit Chay-Velasquez's late filed documentary evidence.

The IJ's determinations that Chay-Velasquez is ineligible for asylum, withholding of removal, or relief under the Convention are legal conclusions subject to de novo review. See Escudero-Corona v. INS, 244 F.3d 608, 613 (8th Cir. 2001). The IJ's factual determinations are upheld if supported by substantial evidence in the record. See Hernandez v. Reno, 258 F.3d 806, 812 (8th Cir. 2001). In order to reverse the IJ's factual findings the evidence must not only support a contrary conclusion, but compel it. See INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992).

To be eligible for a grant of asylum, Chay-Velasquez must demonstrate that he is a "refugee." 8 U.S.C. § 1158(b)(1) (2003). That is, he must demonstrate that he is unwilling or unable to return to Guatemala because of past persecution or a well founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. § 1101(a)(42)(A) (2003). A well founded fear is one that is both subjectively genuine

and objectively reasonable.  See Melecio-Saquil v. Ashcroft, 337 F.3d 983, 986 (8th Cir. 2003) (citing Ghasemimehr v. INS, 7 F.3d 1389, 1390 (8th Cir. 1993)).

To be eligible for withholding of removal, Chay-Velasquez must show a clear probability of persecution in Guatemala, on account of race, religion, nationality, membership in a particular social group, or political opinion.  See 8 U.S.C. § 1231(b)(3) (2003).  Because a greater degree of certainty must be shown by a petitioner to qualify for mandatory withholding of removal than for asylum, failure to carry the burden of proof for asylum necessarily precludes withholding of removal. See Tawm v. Ashcroft, 2004 WL 769469, at *3 (8th Cir. Apr. 13, 2004) (citing Habtemicael v. Ashcroft, 360 F.3d 820, 825 (8th Cir. 2004)); Wondmneh v. Ashcroft, 361 F.3d 1096, 1099 (8th Cir. 2004).

Eligibility for asylum and withholding of removal is precluded if the Attorney General decides that there "are serious reasons" to believe that Chay-Velasquez committed "a serious nonpolitical crime" outside the United States before arrival. See 8 U.S.C. §§ 1158(b)(2)(A)(iii) and 1231(b)(3)(B)(iii) (2003).  Deference is due the Attorney General's determinations of a political nature, for the determination of what constitutes a serious nonpolitical crime in another country may affect our relations with that country or its neighbors. Aguirre-Aguirre, 526 U.S. at 425.  The judiciary is not well positioned to take primary responsibility for such decisions. Id. Chay-Velasquez has the burden of proving by a preponderance of the evidence that this ground for exclusion is inapplicable. See id. at 432.

The conditions which must be met for consideration of withholding of removal under the Convention are identified in 8 C.F.R. §§ 208.16-.18 (2003), and Chay-Velasquez bears the burden to establish that it is more likely than not that he would be tortured if removed to Guatemala. See Perinpanathan v. INS, 310 F.3d 594, 599 (8th Cir. 2002).  Torture is defined as any act by which severe pain or suffering is intentionally inflicted for an impermissible purpose with the consent or acquiescence

of a public official.  See 8 C.F.R. § 208.18(a) (2003).  Torture does not include pain or suffering arising from lawful sanctions that do not otherwise defeat the Convention's purposes.

Chay-Velasquez challenges the IJ's finding that he committed serious nonpolitical crimes and is therefore ineligible for both political asylum and withholding of removal.  Chay-Velasquez argues that his protest activities were political in nature and that what constitutes a serious nonpolitical crime is not susceptible of rigid definition, citing Aguirre-Aguirre, 526 U.S. at 429.  He also points out that he was a minor when he engaged in the protests and that he did not engage in attacks on innocent civilians.  See id. at 423.

The evidence in the record supports the IJ's findings that Chay-Velasquez had endangered the public and committed violent acts out of proportion to any political aspect of his conduct.  See Aguirre-Aguirre, 526 U.S. at 422.  This includes evidence that he was involved in burning buses which served the civilian population, breaking windows, and fighting with police.  The fact that police officers were the target of his bottle bombs rather than civilians does not convert his acts into political offenses.  See Efe v. Ashcroft, 293 F.3d 899, 905-06 (5th Cir. 2002) (demonstrator's attack and killing of police officer at a political rally was disproportionate to his political objectives).  Chay-Velasquez did not carry his burden to prove that the serious nonpolitical crime preclusion should not apply to his case.  The IJ's conclusion that Chay-Velasquez is ineligible for asylum or withholding of removal because of serious nonpolitical crimes is supported by the law, as well as by substantial evidence in the record.

Chay-Velasquez requests relief under the Convention Against Torture.  The government argues that he has waived this claim by not raising it in his opening brief.  See United States v. Brown, 108 F.3d 863, 867 (8th Cir. 1997) (argument first raised in reply brief is not considered without reason shown for failure to raise earlier).

-6-

Since there was no meaningful argument on this claim in his opening brief, it is waived. We also note that he would not prevail on this claim based on the evidence in the record. Although he alleges he was in fear of death and claims that he was sometimes followed by security personnel, Chay-Velasquez remained in Guatemala until he graduated from high school in November 1998. There is no clear evidence that the Guatemalan authorities even knew of Chay-Velasquez's involvement in criminal activities because he was never detained, interrogated, or arrested. He has not shown that prosecution and punishment for such actions would amount to torture under the Convention.

Chay-Velasquez argues that the IJ abused his discretion in refusing to admit a supplemental filing to his asylum application. Approximately seven months after the hearing, Chay-Velasquez offered a "Supplement to Political Asylum Package." The Attorney General opposed the submission because the proceedings had been closed and argued that Chay-Velasquez should not be allowed to rehabilitate his testimony without cross examination. Without citing any authority, Chay-Velasquez alleges that the IJ's refusal to admit this material was an abuse of process and led to an outcome based on stale information.

The IJ's refusal to admit evidence after the deadline and after the proceedings were closed was consistent with immigration hearing regulations. An IJ may set and extend time limits for filings, and "[i]f an application or document is not filed within the time set by the Immigration Judge, the opportunity to file that application or document shall be deemed waived." 8 C.F.R. § 1003.31(c) (2003). Chay-Velasquez could have filed a motion to reopen, accompanied by material evidence not previously available or evidence of changed country conditions, see 8 C.F.R. §§ 1003.2 and .23 (2003), but he did not. The IJ's refusal did not prejudice Chay-Velasquez because his supplemental materials would not have affected the basis for denying him relief because of the serious nonpolitical crimes he committed prior to

entering the United States.  The IJ's decision not to admit late filed information was not an abuse of discretion.

Accordingly, the Board's order is affirmed.

_____