# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2798

_____

Gloria Bernal-Rendon, et al.,      *
     *
     Petitioners,      *
     *    Petition for Review of an Order
     v.      *    of the Board of Immigration Appeals.
     *
Alberto R. Gonzales,      *
United States Attorney General,      *
     *
     Respondent.      *

_____

Submitted: June 22, 2005
Filed: August 23, 2005

_____

Before MURPHY, BYE, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Gloria Bernal-Rendon, her husband Jairo Rios-Giraldo, and her two daughters (petitioners) appeal from a decision of the Board of Immigration Appeals (BIA). The BIA affirmed and adopted the decision of the immigration judge (IJ), denying petitioners' asylum claim, request for withholding of removal, and request for protection under the Convention Against Torture (CAT), but granted petitioners voluntary departure. Petitioners seek reversal and remand of the BIA's decision. We affirm.

## I. *Background*

Petitioners are citizens of Colombia who resided in the city of Armenia, Colombia. Petitioners entered the United States as visitors and overstayed their departure date. They were arrested by the former Immigration and Naturalization Service and charged with being subject to removal under 8 U.S.C. § 1227(a)(1)(B) (2000) (staying beyond a departure date). Additionally, Bernal-Rendon and Rios-Giraldo were charged with removal under 8 U.S.C. § 1227(a)(1)(C)(i) (failing to maintain or comply with the conditions of a person's non-immigrant status).

Petitioners applied for asylum, withholding of removal, protection under CAT, or in the alternative, voluntary departure. Petitioners fear that if they return to Colombia, they would be targeted for persecution by the Fuerzas Armadas Revelutionarios de Colombia-Ejercito Popular (FARC). Bernal-Rendon claims that petitioners were targeted because of her imputed political opinion and/or her membership in a social group consisting of her family.

At a hearing before an IJ, Bernal-Rendon testified that her sister, Maribel Bernal-Rendon, a government engineer, was kidnapped, held for three days, and interrogated by the FARC. The interrogation included questions about the daily movements of Bernal-Rendon's family, including their residence, work location, and where the daughters went to school. Prior to Maribel Bernal-Rendon's kidnapping, another government engineer disappeared.

Bernal-Rendon testified that four months after her sister was kidnapped, a female from FARC controlled territory arrived unsolicited at petitioners's house seeking employment. Bernal-Rendon employed her as a maid. Maribel Bernal-Rendon warned Bernal-Rendon that the maid could be a FARC spy. Later, Bernal-Rendon fired this woman for offering to take her daughters to the park, the supermarket, or for a walk. The maid also asked on several occasions whether Bernal-

-2-

Rendon thought she might kidnap her daughters. Following the firing, Bernal-Rendon and her husband received several threatening anonymous telephone calls. The callers indicated that they knew Maribel Bernal-Rendon worked for the government, that Bernal-Rendon's family "[has] enough money," and that at any time she could "receive some scare . . . with regard to [her] daughters." Bernal-Rendon and Rios-Giraldo did not report the telephone calls, change their telephone number, or hire a security guard. Bernal-Rendon claimed that they lived in a secure area.

Bernal-Rendon also testified that her daughters were driven to school by Rios-Giraldo and picked up for lunch. Bernal-Rendon stated that she did not go into the streets very often because of fear for her daughters. Petitioners received no other threats than the telephone calls. Bernal-Rendon's mother, father, and one sister still live in Armenia, Colombia. Her two other siblings live in Florencia, Colombia.

Bernal-Rendon submitted an affidavit executed by Maribel Bernal-Rendon, stating that Maribel Bernal-Rendon was an engineer, that several co-workers were kidnapped by FARC, held for three days and released, and that she was briefly kidnapped by FARC. She stated that her husband was briefly taken by FARC, but soon returned. The affidavit also indicated that Maribel Bernal-Rendon was concerned about the security of her family when Bernal-Rendon hired a maid who appeared to be a FARC spy. Maribel Bernal-Rendon also indicated that she received frequent blackmail telephone calls that she reported to the authorities.

## II. *Discussion*

We review questions of law *de novo* and accord substantial deference to the BIA's interpretation of immigration law and agency regulations. *Tang v. INS*, 223 F.3d 713, 718–19 (8th Cir. 2000); *Ikenokwalu-White v. INS*, 316 F.3d 798, 804 (8th Cir. 2003) (holding that the BIA's interpretation of immigration law is entitled to deference). We review an IJ's fact determinations under the substantial evidence test. *Melecio-Saquil v. Ashcroft*, 337 F.3d 983, 986–87 (8th Cir. 2003); *Perinpanathan v.*

*INS*, 310 F.3d 594, 597 (8th Cir. 2002). Under that test, we will affirm if the IJ's decision is supported by reasonable, substantial, and probative evidence. *Melecio-Saquil*, 337 F.3d at 986–97; *Perinpanathan*, 310 F.3d at 597. We will reverse only if the petitioner demonstrates that the evidence is so compelling that no reasonable factfinder could fail to find in favor of the petitioner. *Melecio-Saquil*, 337 F.3d at 986; *Perinpanathan*, 310 F.3d at 597. Where the BIA adopts and affirms the IJ's opinion, we review the IJ's decision directly. *Loulou v. Ashcroft*, 354 F.3d 706, 708 (8th Cir. 2003); *Hassanein v. Ashcroft*, 380 F.3d 324, 327–28 (8th Cir. 2004).

A. *Asylum*

Petitioners contend that we should review their asylum claim because they subjectively and objectively demonstrated a well found fear of persecution upon return to Columbia. Asylum applicants must demonstrate by clear and convincing evidence that they filed an application within one year of arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). Petitioners failed to do this. There are exceptions to this rule, *see* 8 U.S.C. § 1158(a)(2)(D) (changed circumstances materially affecting an applicant's eligibility of asylum or extraordinary circumstances relating to the filing delay), but the petitioners have not raised them. Consequently, we lack jurisdiction to review the IJ's decision. 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General" regarding the timeliness of an asylum application); *Ismailov v. Reno*, 263 F.3d 851, 855 (8th Cir. 2001) (finding § 1158(a)(3) to be an absolute bar to judicial review).

Relying on *El Himri v. Ashcroft*, 378 F.3d 932 (9th Cir. 2004), petitioners argue that the IJ erred in denying their minor daughter's application for asylum. In *El Himri*, the Ninth Circuit agreed with the IJ that the one-year filing requirement does not apply to minors. We have declined to adopt the Ninth Circuit's position. *See Begna v. Ashcroft*, 392 F.3d 301, 303 (8th Cir. 2004); *Ismailov*, 263 F.3d at 855.

B. *Withholding of Removal*

An alien who shows there is a clear probability that her "life, or freedom would be threatened in [her] country because of [her] race, religion, nationality, membership in a particular social group or political opinion," is eligible for withholding of removal. 8 U.S.C. § 1231(b)(3)(A)(1999); *Ngure v. Ashcroft*, 367 F.3d 975, 989 (8th Cir. 2004). The alien "must establish that it is more likely than not that [she] will suffer persecution." *Id.*

Petitioners contend that they are "members of a family that has suffered persecution at the hands of the guerillas who are everywhere." However, petitioners's evidence does not meet the high standard of being "so compelling that no reasonable factfinder could fail to find" in their favor. *Hassan v. Ashcroft*, 388 F.3d 661, 666 (8th Cir. 2004). Petitioners rely heavily upon Maribel Bernal-Rendon's kidnapping. However, the evidence does not show that Maribel Bernal-Rendon's kidnapping made persecution of Bernal-Rendon more likely. Rather, the kidnapping appeared to be connected to Maribel Bernal-Rendon's specific government employment. Further, although petitioners claim a threat based on their political opinion, they fail to discuss their political opinion or indicate how it differs from FARC.

While petitioners correctly contend that a nuclear family can constitute a social group, *Gebremichael v. INS*, 10 F.3d 28, 36 (1st Cir. 1993) ("There can, in fact, be no plainer example of a social group based on common, identifiable and immutable characteristics than that of the nuclear family."); *see also Sanchez-Trujillo v. INS*, 801 F.2d 1571, 1576 (9th Cir. 1986) (the prototype of a social group would consist of "the immediate members of a certain family"), petitioners fail to prove that a specific threat exists to their family as a social group. Moreover, petitioners's extended family still lives without incident in the cities of Armenia and Florencia, Columbia. An alien's fear of persecution is reduced when her family remains unharmed in her native country. *In re A-E-M*, 21 I&N Dec. 1157 (BIA 1998).

Petitioners cannot show that there is a clear probability that their lives would be threatened based on membership in a social group or political opinion.

## C. *CAT*

Under CAT, an alien must show that "it is more likely than not that [she] would be tortured if returned to the proposed country of removal." *Ngure*, 367 F.3d at 992 (citing *Perinpanathan*, 310 F.3d at 599); 8 C.F.R. § 208.16(c)(2). In determining eligibility under CAT, "all evidence relevant to the possibility of future torture should be considered, including but not limited to: past torture inflicted upon the applicant; the applicant's ability to relocate to another area of the country where torture is unlikely; and gross, flagrant, or mass violations of human rights." *Ngure*, 367 F.3d at 992; 8 C.F.R. § 208.16(c)(3). To sustain a CAT claim, petitioners must show that the government of Colombia is the agent of torture. *See In re S-V-*, 22 I&N Dec. 1306 (BIA 2000) (holding that third party actors are not covered by CAT). Petitioners failed to make such a showing as the claimed fear of torture was from FARC, not from the government of Colombia.

## III. *Conclusion*

For the foregoing reasons we affirm the decision of the BIA.

_____