# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3345

_____

Ze Bei Zheng

*Petitioner*

v.

Eric H. Holder, Jr., Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: June 14, 2012
Filed: October 31, 2012

_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Ze Bei Zheng, a citizen of China, entered the United States in 1993 and filed a Request for Asylum. The government commenced removal proceedings in 2005. Zheng conceded removability and sought asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), claiming past and a well-founded fear of future persecution as a result of his resistance to China's coercive

family planning policies. An Immigration Judge ("IJ") denied relief and ordered Zheng removed to China. The Board of Immigration Appeals ("BIA") affirmed the IJ's determinations in a lengthy opinion. Zheng petitions for judicial review of both decisions. We deny the petition.

## I.

At the June 2010 administrative hearing, Zheng testified to the following facts, most of which were not in his 1993 asylum application.[1] In 1984, he and his wife had a second child. Family planning officials came to their rural home in Changle, demanding that one of them be sterilized because they had violated China's one-child policy. Zheng said he would undergo sterilization but pleaded to wait until his son was older. Zheng and his wife then fled to another city for a few months to avoid arrest. While they were gone, officers came to their home and confiscated furniture. After they returned, officers came to the home and arrested Zheng's wife; Zheng escaped by jumping from a second-story window, injuring his leg.

Zheng's wife was taken to a hospital and underwent forced sterilization. When Zheng returned, he went to the family planning office and demanded return of his furniture because his wife had been sterilized. The officials refused, even after Zheng paid a fine. He argued with the head official but did not fight him in the office. Instead, knowing where the official lived, Zheng waited for the official on his way home, pushed him off his bicycle, and beat him with a wooden stick until he was bloody, resulting in what Zheng described as "a very serious injury." Zheng then escaped and lived in another city for eight years. His wife remained in their home, periodically paying fines because of their second child. At various times, officers came to Zheng's home to arrest him for beating the family planning official. Zheng

---

[1]Zheng testified that a lawyer prepared his 1993 application, he did not get to read it, and portions were inaccurate.

submitted as additional evidence a 1993 summons charging a violation of family planning laws, and a 1995 arrest warrant. The warrant did not specify a crime, simply reciting that "the major facts of the crime have been investigated and proved."

The Attorney General has discretion to grant asylum to a "refugee." 8 U.S.C. § 1158(b)(1)(A). The term refugee includes a person who has been persecuted "on account of . . . political opinion." 8 U.S.C. § 1101(a)(42)(A). A person "who has been forced . . . to undergo involuntary sterilization, or who has been persecuted for . . . other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion." 8 U.S.C. § 1101(a)(42)(B). Zheng argued to the IJ that his physical altercation with the family planning official was "other resistance" to China's coercive family planning policies.

A person is ineligible for asylum, withholding of removal, and the primary relief under the CAT if "there are serious reasons for believing that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States." 8 U.S.C. § 1158(b)(2)(A)(iii) (asylum); see 8 U.S.C. § 1231(b)(3)(B)(iii) (withholding of removal); 8 C.F.R. § 1208.16(d)(2) (CAT). The IJ found Zheng credible but denied relief because his attack on the family planning official provided serious reasons for believing that he committed a serious nonpolitical crime before entering the United States:

> The crime perpetrated by [Zheng] is unequivocally serious. [Zheng] brutally assaulted a public official with a weapon. Moreover, the fact that [Zheng] waited for the official as he traveled home is especially concerning. This is not a case where [Zheng] acted in self-defense or in the "heat of the moment." Quite simply, [Zheng] planned and orchestrated a brutal attack against a defenseless individual.
>
> In addition, [Zheng's] crime can not be described as political. [Zheng] testified that he beat the family planning official because the

official refused to return [Zheng's] property, not because the official threatened him on the basis of Chinese family planning laws.

Alternatively, the IJ found that Zheng failed to establish eligibility for the three types of relief. The BIA affirmed on both grounds, rejecting Zheng's contention that his due-process rights were violated by the absence of an interpreter at preliminary hearings or the failure to provide a qualified interpreter at the final hearing.

A. On appeal, Zheng first argues the BIA erred in concluding that his assault of the family planning official was a serious nonpolitical crime. "We review questions of law *de novo* and accord substantial deference to the BIA's interpretation of immigration law and agency regulations." Bernal-Rendon v. Gonzales, 419 F.3d 877, 880 (8th Cir. 2005) (citations omitted). We review factual determinations under the substantial evidence standard, reversing only if "the evidence is so compelling that no reasonable factfinder could fail to find in favor of the petitioner." Id. (citations omitted). The IJ's finding that "there are serious reasons to believe" Zheng committed a "serious nonpolitical crime" is a finding of fact we review under the substantial evidence test. Efe v. Ashcroft, 293 F.3d 899, 905 (5th Cir. 2002).

Zheng argues the BIA erred in denying relief on this ground because his attack on the family planning official was "other resistance" to China's family planning policy within the meaning of 8 U.S.C. § 1101(a)(42)(B). An action *cannot* be a "serious nonpolitical crime," he contends, if it was part of the attacker's "other resistance" to China's coercive family planning policies. We disagree because the contention is contrary to the Supreme Court's decision in INS v. Aguirre-Aguirre, 526 U.S. 415, 422-24 (1999), where the Court explicitly approved the BIA's test for determining whether a crime constitutes a serious nonpolitical crime:

> In evaluating the political nature of a crime, we consider it important that the political aspect of the offense outweigh its common-law

-4-

character. This would not be the case if the crime is grossly out of proportion to the political objective or if it involves acts of an atrocious nature.

Matter of McMullen, 19 I & N Dec. 90, 97-98 (BIA 1984). Applying this test, political action such as "other resistance" to family planning policies can constitute a serious nonpolitical crime if its criminal character outweighs its political aspect, as was the case in Matter of McMullen and in Chay-Velasquez v. Ashcroft, 367 F.3d 751, 755 (8th Cir. 2004).

Turning to the IJ's factual findings as upheld by the BIA, the IJ explicitly found that Zheng's assault of the family planning official was *not* a political response to China's family planning policy. Rather, it was motivated by the official's refusal to return Zheng's property. This finding is supported by Zheng's testimony that he lay in wait and beat the official because he refused to return Zheng's property after his wife was involuntarily sterilized and he paid a fine. Of course, the incident resulted from vigorous enforcement of China's family planning policies (or perhaps from corruption or graft), but that remote causal link does not compel a finding that an after-hours planned assault of one official was part of Zheng's "other resistance."

The IJ further found that Zheng's nonpolitical crime was "unequivocally serious." Again, this finding is consistent with Zheng's testimony that he beat the official with a stick until he was bloody, resulting in "a very serious injury." The ambiguous 1995 arrest warrant, and Zheng's testimony that officials came to his home after he fled to arrest him for beating a high-ranking official, further support the finding that he committed a serious crime.

For these reasons, we conclude that substantial evidence in the administrative record as a whole supports the finding that there are serious reasons to believe Zheng committed a serious nonpolitical crime outside the United States before arriving in

the United States and is therefore ineligible for asylum, withholding of removal, or withholding of removal under the CAT. This conclusion makes it unnecessary to consider Zheng's further contention that he satisfied his burden to prove past persecution *of him* with evidence of economic harm and the forced sterilization of his wife. See generally In re A-K-, 24 I. & N. Dec. 275, 278 (BIA 2007).

B. Zheng next argues the IJ erred in not addressing whether he was eligible for deferral of removal under the CAT. The Attorney General's CAT regulations provide that an alien who is entitled to protection under the CAT, but is ineligible for withholding of removal because there are serious reasons to believe he committed a serious nonpolitical crime outside the United States, "shall be granted deferral of removal to the country where he or she is more likely than not to be tortured." 8 C.F.R. § 1208.17(a). Assuming without deciding that an obscure reference to "deferral of removal" in the statement of issues in Zheng's brief to the BIA adequately preserved this issue, the BIA rejected the contention because it agreed with the IJ that Zheng "did not satisfy his high burden of proving eligibility for protection under the CAT." We agree. The regulation expressly provides that deferral of removal is available only if the alien has been found to be entitled to protection under the CAT. The argument that the 1995 arrest warrant established that Zheng is more likely than not to be tortured upon returning to China is without merit.[2]

C. Finally, Zheng argues that his right to procedural due process was violated when no interpreter was present at a July 18, 2006 hearing, and a "qualified" interpreter was not provided at his final hearing. We review a due process challenge *de novo*. To prevail, Zheng "must demonstrate both a fundamental procedural error and that the error resulted in prejudice," that is, "a showing that the outcome of the

---

[2]Zheng further cites a 2010 State Department report that "administrative punishments" are imposed on those who violate China's child limit policy, but that report is not in the administrative record and may not be considered. See 8 U.S.C. § 1252(b)(4)(A); Escoto-Castillo v. Napolitano, 658 F.3d 864, 866 (8th Cir. 2011).

proceeding may well have been different had there not been any procedural irregularities." Bracic v. Holder, 603 F.3d 1027, 1032 (8th Cir. 2010) (quotations omitted). We agree with the BIA that Zheng failed to demonstrate how the absence of an interpreter at the earlier hearing, when he was represented by an attorney, "prejudiced his case." And after careful review of the transcript of the final hearing, we also agree with the BIA that (i) Zheng's attorney could have challenged the interpreter's adequacy but did not, and (ii) the gaps and insufficiencies in Zheng's testimony cannot be attributed to translation errors. As in Meas v. Ashcroft, 363 F.3d 729, 730 (8th Cir. 2004), there was no showing of prejudicial translation because "[t]he transcript of [Zheng's] testimony as a whole was understandable and coherent, and thus [Zheng] was able to convey [his] story to the IJ."

## II.

We heard oral argument on June 14, 2012. Nearly two months later, Zheng's attorney filed a two-page Motion To Withdraw, stating:

> On Wednesday, August 8, 2012, Mr. Zheng informed counsel during an in-person conversation through his interpreter, Wen Li An, that significant portions of his testimony before the Immigration Court were not true, including his testimony that he hit a family planning officer with a stick in China. Mr Zheng also indicated to counsel that some of the evidence he obtained from China, including specifically the arrest warrant from China, was fabricated.

> Counsel was previously unaware that this testimony and evidence was false. However, now knowing that counsel has represented to this Court facts that are not true, Counsel is bound to disclose these things to the Court pursuant to [Kansas Rule of Professional Conduct] § 3.3(b).

This new information is not part of the administrative record and thus cannot be considered in addressing the merits of Zheng's petition for review. Escoto-

Castillo, 658 F.3d at 866.  If counsel's report is true, it warrants dismissing the petition for abuse of the administrative and judicial processes.  See Martin v. DaimlerChrysler Corp., 251 F.3d 691, 695 (8th Cir. 2001); Pope v. Fed. Express Corp., 974 F.2d 982, 984 (8th Cir. 1992).  However, counsel's unverified motion was not accompanied by a confirmation from Zheng or by other corroborating evidence of the alleged dishonesty.  We decline to assume the truth of counsel's serious, unsworn allegations.  And even were we so inclined, Congress has barred a remand to the BIA for further fact-finding or consideration of this new information.  See 8 U.S.C. § 1252(a)(1); Ezeagwu v. Mukasey, 537 F.3d 836, 840 (8th Cir. 2008).  Therefore, we have ignored the Motion To Withdraw, addressed the petition for review on the merits based on the administrative record, and concluded the petition must be denied.  However, we encourage the appropriate agency officials to carefully consider the allegations in counsel's Motion To Withdraw should Zheng petition or apply for further relief under the immigration statutes and regulations.

For the foregoing reasons, we deny the petition for review and counsel's Motion To Withdraw.

_____