# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1546
_____

Willian Ernesto Rubio Barahona

*Petitioner*

v.

Monty Wilkinson, Acting Attorney General of the United States

*Respondent*

------------------------------

Fair Trials Americas

*Amicus Curiae*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: November 18, 2020
Filed: February 3, 2021

_____

Before BENTON, ERICKSON, and GRASZ, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Willian Rubio Barahona petitions for review of a decision by the Board of Immigration Appeals ("BIA") upholding the denial of his request for asylum and withholding of removal, based on a finding that serious reasons exist to believe Barahona committed a serious nonpolitical crime outside the United States. We hold that the "serious reasons for believing" standard requires a finding of probable cause before an alien can be subject to the mandatory bar set forth in 8 U.S.C. § 1158(b)(2)(A)(iii), 8 U.S.C. § 1231(b)(3)(B)(iii), and 8 C.F.R. § 1208.16(d)(2). Because no such finding was made below, we reverse and remand for further proceedings.

## I.    BACKGROUND

Barahona is a native and citizen of El Salvador who entered the United States illegally in December 2012. His wife, Cecila Rivera de Rubio, came to the United States a few years later and was granted asylum. On September 21, 2018, Cecila filed a Form I-730 asylum petition on Barahona's behalf. In reviewing the asylum petition, agents with the Department of Homeland Security ("DHS"), U.S. Citizenship and Immigration Services, performed a record check and discovered an Interpol Red Notice dated July 2018 requesting Barahona's extradition as a fugitive sought for criminal prosecution in El Salvador. The underlying alleged crime was for participating in an "illicit gathering" in violation of Article 345 of the Salvadoran Penal Code. The Red Notice indicated that, according to an investigation conducted in 2010, Barahona was identified by an informant to be a "gatillero"[1] or "hit man" for the Mara Salvatrucha ("MS-13") criminal organization. An arrest warrant was issued for Barahona in 2016.

---

[1]The exact meaning of "gatillero" is open to some dispute. Barahona testified that the term may mean "hitman" or "delivery man." The Interpol Red Notice uses the phrase, "Barahona has the position of 'gatillero' [hit man] within the organization."

Immigration and Customs Enforcement agents took Barahona into custody. Because Barahona was determined to be a danger to the security of the United States, his asylum petition was denied. On February 25, 2019, Barahona was charged with being removable under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without having been admitted or paroled. On May 6, 2019, Barahona appeared before an Immigration Judge ("IJ") and, after conceding his removability, requested asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), based on his fear of MS-13 in El Salvador.

A hearing was held and Barahona testified that MS-13 shot his father in 2006 because he was a police sergeant investigating an MS-13 murder. His father survived and fled to the United States. For three years, beginning when Barahona was 13 years old, MS-13 extorted money from him and his mother. Barahona provided contradictory testimony about his fear of MS-13. He denied being a member of MS-13 or serving as a hit man. Barahona testified that on at least two occasions he refused to follow directions from MS-13, including once when he declined to drive a getaway car as part of a murder plot and another time when he refused to steal a police uniform. Barahona also testified that he had served as a lookout for the police on three occasions because he feared for his life if he refused.

Barahona also recounted a particular incident during the spring of 2010 when MS-13 members forced him at gunpoint to walk with them. They saw a man whom Barahona recognized as a police officer, but when the gang asked Barahona to identify the man, he refused. MS-13 members ordered Barahona to rob the man. Barahona approached the man, but returned empty-handed, claiming the man did not have anything of value. When Barahona refused to hurt the man, one of the MS-13 members shot Barahona. When he awoke from surgery in the hospital, a police officer told Barahona they found a gun under his belt and he was charged with unlawful possession. When Barahona appeared in court, MS-13 members were present so he was too afraid to tell the judge what had actually happened. Barahona

testified that he never joined MS-13, even though they recruited him and threatened to kill him.

Barahona admitted he entered the United States illegally in 2012. Cecila came later, after she was raped by MS-13 members because she worked in the county prosecutor's office. Cecila also testified at the hearing and largely corroborated Barahona's statements.

DHS submitted evidence of the Red Notice and explained the standards to file one. Barahona, in turn, submitted a letter from an attorney in El Salvador suggesting the criminal charges against him had been dropped. DHS confirmed the Red Notice remained active but was unable to verify by the time of the hearing whether the underlying charges were still pending.

On August 16, 2019, the IJ denied Barahona's applications for relief and protection from removal, based on a finding that serious reasons exist to believe Barahona committed serious nonpolitical crimes outside the United States. The IJ also found it was *not* more likely than not that Barahona would be tortured in El Salvador. Barahona appealed the IJ determination, arguing the Red Notice was insufficient to establish probable cause that he committed a serious nonpolitical crime, and that a violation of Article 345 does not constitute a serious nonpolitical crime. Barahona did not appeal the findings with regard to his CAT claims.

In a decision dated March 6, 2020, the BIA dismissed Barahona's appeal. The BIA acknowledged that the "serious reasons for believing standard" is equivalent to probable cause, and that – while Barahona bears the initial burden to prove eligibility for asylum – DHS bears the burden to establish mandatory bars to relief. Because DHS presented "some evidence" to establish that the bar may apply, the BIA explained, the burden shifted back to Barahona to prove otherwise by a preponderance of the evidence. Finding the Red Notice sufficient to meet the "some

evidence" standard, the BIA upheld the denial of asylum. Barahona filed a timely petition for review.

## II.    DISCUSSION

We review decisions of the BIA on questions of law *de novo* and accord substantial deference to interpretations of immigration law and agency regulations. Bernal-Rendon v. Gonzales, 419 F.3d 877, 880 (8th Cir. 2005) (citations omitted). "We review factual determinations under the substantial evidence standard, reversing only if the evidence is so compelling that no reasonable factfinder could fail to find in favor of the petitioner." Zheng v. Holder, 698 F.3d 710, 713 (8th Cir. 2012) (quotation omitted).

A non-citizen may apply for asylum by establishing their eligibility as a "refugee" who is unable or unwilling to return to their home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); 8 U.S.C. § 1158(b)(1)(A). However, an applicant is ineligible for asylum or withholding of removal for several reasons, including where "there are serious reasons for believing that the alien has committed a serious nonpolitical crime outside the United States" prior to his arrival in the United States. 8 U.S.C. § 1158(b)(2)(A)(iii), 8 U.S.C. § 1231(b)(3)(B)(iii), and 8 C.F.R. § 1208.16(d)(2). As the BIA explained, and the parties here agree, the "serious reasons for believing" standard is equivalent to probable cause. Matter of E-A-, 26 I. & N. Dec. 1, 3 (2012). Barahona argues, however, that the BIA erred by accepting the Red Notice as "some evidence" to establish the mandatory bar under 8 U.S.C. § 1158(b)(2)(A)(iii), 8 U.S.C. § 1231(b)(3)(B)(iii), and 8 C.F.R. § 1208.16(d)(2), without a finding of probable cause.

The law makes clear that Barahona carries the initial burden to establish whether he satisfies the eligibility requirements to obtain asylum or relief from removal. 8 U.S.C. § 1158(b)(1)(B)(i); 8 U.S.C. § 1229a(c)(4)(A). But, DHS has the burden to show that "one or more" mandatory bars to relief exists, such as the "serious nonpolitical crime" bar at issue here. The relevant regulation states: "If the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply." 8 C.F.R. § 1240.8(d).

The BIA cites to Matter of M-B-C-, for the principle that the "serious reasons for believing" standard is not an onerous one. 27 I. & N. Dec. 31, 36–37 (2017). While it is true that for most of the mandatory bars to relief, DHS may shift the burden by presenting some evidence from which a reasonable factfinder could conclude that one or more grounds for mandatory denial of the application may apply, the "some evidence" standard necessarily relates to the several "one or more" grounds for mandatory denial governed by 8 C.F.R. § 1240.8. For instance, in Matter of M-B-C-, the underlying application was denied after the IJ found the applicant "ordered, incited, assisted or otherwise participated in" genocide. Id. at 33. However, that particular mandatory bar does not have the same "serious reasons for believing" standard that is required to prove "serious nonpolitical crimes" under 8 U.S.C. § 1158(b)(2)(A)(iii), 8 U.S.C. § 1231(b)(3)(B)(iii), and 8 C.F.R. § 1208.16(d)(2).

In contrast, in Matter of E-A-, the BIA determined that probable cause is required to meet the "serious reasons for believing" standard. 26 I. & N. Dec. at 3. In that case, the BIA affirmed the denial of relief based on the petitioner's own testimony that he committed the crimes. Id. Courts have affirmed the denial of relief if the petitioner admitted the alleged crime or there was corroborating information supporting the alleged crime. See, e.g., Go v. Holder, 640 F.3d 1047, 1052 (9th Cir. 2011) (upholding the denial of relief on the basis that probable cause existed to

believe petitioner actually committed the alleged drug crimes based on his own admissions); Khouzam v. Ashcroft, 361 F.3d 161, 166 (2d Cir. 2004) (upholding the denial of relief based on the IJ's review of police investigative reports and accounts of injuries sustained by petitioner, which were consistent with the alleged crime). In a case involving a Red Notice, the court found probable cause was satisfied after the government submitted "substantial evidence" that petitioner committed manslaughter, which included the Red Notice, trial records, sentencing order, and letters from the Chief of Police in El Salvador. Marroquin-Retana v. Attorney General, 675 F. App'x 216 (3d Cir. 2017) (unpublished).

The statutory framework and relevant case law direct us to require something more than "some evidence" in order to meet the probable cause standard in cases involving "serious reasons for believing" that a serious nonpolitical crime was committed. The parties did not cite, and we could not find, a case in which a court has found a Red Notice, alone, is sufficient to meet this standard. Also complicating the analysis in this case is whether or not the charges giving rise to the Red Notice had been dismissed. Barahona submitted evidence that the charges had been dismissed. DHS did not refute and did not ask for additional time to resolve whether this was accurate. The BIA erred in this case when it failed to make a probable cause finding, particularly in light of the dispute regarding the underlying criminal charges that gave rise to the Red Notice.

Barahona also argues the BIA incorrectly applied a "clearly erroneous" standard of review, rather than reviewing the case *de novo*. Barahona acknowledges, however, that the BIA is authorized to employ a dual standard of review. That is, "questions of law, discretion, and judgment" are reviewed *de novo*, while factual findings – including questions of credibility – shall be reviewed under a clearly erroneous standard. 8 C.F.R. § 1003.1(d)(3)(i)–(ii). The BIA's task was to "accept the facts as found by the IJ and determine de novo" whether Barahona was eligible for relief. Waldron v. Holder, 688 F.3d 354, 361 (8th Cir. 2012) (reversing the BIA

after it engaged in inappropriate factual findings). Under our precedent, we find no error with the method of analysis the BIA used.

Finally, Barahona argues the crimes charged in El Salvador do not meet the definition of a serious nonpolitical crime. "The evaluation of a serious nonpolitical crime is conducted on a case-by-case basis considering the facts and circumstances presented." Matter of E-A-, 26 I. & N. Dec. at 3. Barahona was charged with illicit gathering, a violation of Article 345 of the Salvadoran Penal Code, related to events involving MS-13. The IJ reviewed the charging statute and determined the crime involved a substantial risk of violence and harm to a person. Id. at 3 & n.3. The IJ also noted the alleged crime lacked any political character, and indeed Barahona conceded it was nonpolitical. We find no clear error in the agency's determination that the charged crimes were of a serious nonpolitical nature.

## III.  CONCLUSION

Because the BIA failed to make a probable cause finding to support the mandatory bar set forth in 8 U.S.C. § 1158(b)(2)(A)(iii), 8 U.S.C. § 1231(b)(3)(B)(iii), and 8 C.F.R. § 1208.16(d)(2), we reverse and remand for proceedings consistent with this opinion.

_____