# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-3565

_____

Hector Orlando Herrera-Elias

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: November 15, 2023
Filed: March 4, 2024

_____

Before LOKEN, ERICKSON, and GRASZ, Circuit Judges.

_____

LOKEN, Circuit Judge.

Hector Herrera-Elias, a native and citizen of Honduras, entered the United States unlawfully on May 18, 2014. The Department of Homeland Security (DHS) issued a Notice to Appear on July 8, 2015, charging he is removable under 8 U.S.C. § 1182(a)(6)(A)(i). On November 20, Herrera-Elias conceded removability and filed a petition for asylum, withholding of removal, and relief under the Convention

Against Torture (CAT), claiming fear of persecution and torture in Honduras because the notorious MS-13 criminal gang forced him to "transport drugs, firearms, and have [him] spy on people." At the start of the July 18, 2018 merits hearing, counsel requested a continuance because Herrera-Elias had disclosed five days before the hearing that he is a gay man and more time was needed to prepare for this aspect of his claim. The Immigration Judge (IJ) granted a continuance over DHS's objection.

Herrera-Elias then filed an updated asylum application based additionally on his sexual orientation. The IJ conducted the merits hearing in October 2018 and July 2019. DHS argued Herrera-Elias (i) was ineligible for asylum because he failed to file the application within one year of entering the United States, see 8 U.S.C. § 1158(a)(2)(B); and (ii) is barred from asylum and withholding of removal for having committed a serious nonpolitical crime before entering the United States, see 8 U.S.C. §§ 1158(b)(2)(A)(iii), 1231(b)(3)(B)(iii).

## I.

At the hearing, Herrera-Elias testified that, at age thirteen, he met a member of the MS-13 gang named Josue Figueroa in his home village of Yoro in Honduras. Josue recruited youngsters in Yoro to transport drugs to San Pedro Sula, where the street price of marijuana was much higher. Herrera-Elias agreed to transport drugs and guns for MS-13 on two occasions, eight months apart. He acknowledged that the first time he was "trying to fit in." He was paid for this first trip. A year later, another gang approached Herrera-Elias and, under threat of death, he again transported drugs and guns. When Josue learned of this, he threatened Herrera-Elias that he would be targeted as an enemy unless he spied on the other gang and reported back to MS-13. When Josue was killed, Herrera-Elias fled to the United States with the help of his family. He did not initially disclose his homosexuality given his past trauma and fear. He was not harmed in Honduras due to his sexual orientation, but "anyone can hit" gay people, and there is harassment in the Honduran media.

On July 29, 2019, the IJ denied relief in a lengthy Decision and Order. The IJ concluded the application for asylum was untimely. In addition, the IJ ruled, "there are serious reasons for believing that [Herrera-Elias] has committed a serious nonpolitical crime which precludes . . . asylum and withholding of removal" under 8 U.S.C. § 1158(b)(2)(A)(iii). Though counsel in closing argument asserted that Herrera-Elias's involvement with gangs was "involuntary and under duress," the IJ found that he "willingly transported firearms and drugs for criminal organizations in Honduras." Though he remained eligible for withholding-of-removal relief under the CAT, Herrera-Elias failed to show it is more likely than not that he would be tortured if removed to Honduras because, while there is evidence "the police and gangs 'victimize' the LGBTI community in Honduras," he was never harmed by anyone acting under government authority, and the record does not show "the type of systematic political and governmental mistreatment . . . that qualifies under the definition of 'torture.'"

On November 10, 2022, the Board of Immigration Appeals (BIA) dismissed Herrera-Elias's administrative appeal. Regarding the serious-nonpolitical-crime bar to asylum and withholding of removal, the BIA concluded the IJ did not clearly err in finding that Herrera-Elias, "based on his own admissions, knowingly transported firearms and drugs for criminal organizations in Honduras," and in finding that his involvement was serious in nature "due to the nature and inherent violence of the drug trade." One member of the three-judge panel dissented from this ruling, concluding based on Herrera-Elias's young age and limited involvement in the gang's operations that "his conduct does not constitute a serious nonpolitical crime."

The BIA also rejected Herrera-Elias's argument "that his criminal activity should not serve as a bar to his eligibility for withholding of removal because he

acted under duress." Herrera-Elias relied on a recent BIA decision[1] addressing whether there is a duress exception to the separate "persecutor bar" in 8 U.S.C. §§ 1158(b)(2)(A)(i) and 1231(b)(3)(B)(i).[2] Noting the Attorney General had vacated that decision, the BIA explained:

> Furthermore, we decline to extend the reasoning of *Matter of Negusie* concerning the persecutor bar to the serious nonpolitical crime bar, which was not addressed in that case. The respondent cites no other authority that suggests that there is a recognized duress exception to the serious nonpolitical crime bar.

Herrera-Elias petitions for review of this decision, arguing the BIA erred in analyzing the serious nonpolitical crime issue on an incomplete record because the IJ "fail[ed] to provide a detailed analysis in reaching his conclusion," and failed to consider duress in determining whether the totality of the circumstances showed that a child applicant committed a serious nonpolitical crime.[3]

---

[1]Matter of Negusie, 27 I&N Dec. 347 (BIA 2018), vacated, 28 I&N Dec. 120 (A.G. 2020).

[2]The persecutor bar denies withholding of removal if "the alien ordered, incited, assisted, or otherwise participated in the persecution of an individual because of the individual's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(B)(i). "[W]hether coercion or duress is relevant in determining if an alien assisted or otherwise participated in persecution" is an issue that has generated extensive litigation for many years and still is not fully resolved. Negusie v. Holder, 555 U.S. 511, 517 (2009); see Fedorenko v. United States, 449 U.S. 490 (1981). The Attorney General vacated the BIA's decision on remand in Negusie in a lengthy opinion, rejecting the BIA's conclusion that duress or coercion is relevant in determining whether the bar applies to an alien who is found to have assisted or otherwise participated in persecution. Matter of Negusie, 28 I&N Dec. 120, 155 (A.G. 2020).

[3]The determinations that he is ineligible for asylum due to his untimely application and failed to show eligibility for relief under the CAT are not at issue.

## II.

A person is ineligible for withholding of removal if "there are serious reasons to believe that the alien committed a serious nonpolitical crime outside the United States before the alien arrived in the United States." 8 U.S.C. § 1231(b)(3)(B)(iii). "The IJ's finding that 'there are serious reasons to believe' [Herrera-Elias] committed a 'serious nonpolitical crime' is a finding of fact we review under the substantial evidence test." Zheng v. Holder, 698 F.3d 710, 713 (8th Cir. 2012) (quotation omitted). Under that deferential standard, we will reverse only if "the evidence is so compelling that no reasonable factfinder could fail to find in favor of the petitioner." Id. (quotation omitted).

"The evaluation of a serious nonpolitical crime is conducted on a case-by-case basis considering the facts and circumstances presented." Barahona v. Garland, 993 F.3d 1024, 1028 (8th Cir. 2021), quoting Matter of E-A-, 26 I&N Dec. 1, 3 (BIA 2012). "[P]robable cause is required to meet the 'serious reasons for believing' standard." Id. In Barahona, we held that the agency did not clearly err in finding that charges pending in El Salvador accusing petitioner of being a "hit man" for the MS-13 gang was a "serious nonpolitical crime." Id. at 1027-28. But we remanded because petitioner submitted evidence those Salvadoran charges were dismissed and the BIA had not made a probable cause finding. Id. at 1028-29. In Zheng, we held that substantial evidence supported the IJ's finding of serious reasons to believe petitioner committed a serious nonpolitical crime when petitioner admitted that he lay in wait for a Chinese official who refused to return property seized during enforcement of China's family planning policies, and "beat the official with a stick until he was bloody, resulting in 'a very serious injury.'" 698 F.3d at 714. The IJ found this was a nonpolitical crime that was "unequivocally serious." Id.

Here, Herrera-Elias admitted that he transported guns and drugs for the MS-13 gang on multiple occasions. The issue is whether "there are serious reasons to

-5-

believe" that he admitted committing a "serious nonpolitical crime." Herrera-Elias did not argue before the agency (or this court) that he trafficked drugs and guns for a private gang for political reasons, so the IJ had no reason to address that issue. He carried the contraband in backpacks provided by gang members, who told him he was carrying marijuana or "the little girl," their term for a firearm. The State Department 2017 Country Report for Honduras confirms that narcotics traffickers are significant perpetrators of violent crimes against law-abiding Hondurans, and Herrera-Elias testified that criminal street gangs are pervasive in Yoro.

Herrera-Elias argues the IJ failed to compile an adequate record to address whether his criminal conduct should be considered serious despite his young age, the limited nature of his involvement in the gang's operations, his fear of being killed if he failed or refused to cooperate, and the trauma he suffered as a result of his sexual orientation. He further argues the IJ failed "to explain its departure" from prior cases that had considered childhood coercion and duress in determining whether the alien had committed a serious nonpolitical crime. Therefore, the BIA erred in adopting the IJ's decision, and we should remand to the BIA with instructions to remand to the IJ for thorough development of the record and further analysis of his application.

We conclude the IJ did not deny Herrera-Elias's application on an inadequate record. Herrera-Elias was represented by counsel at the merits hearing so the IJ had no duty "to fully develop the record" with evidence Herrera-Elias argues is lacking concerning the impact of his age and sexual orientation on the serious nonpolitical crime issue. See Deng Chol v. Garland, 25 F.4th 1063, 1071 (8th Cir. 2022). The BIA's ruling that the fact Herrera-Elias was a minor when the crimes were committed "does not exempt his crimes from being considered particularly serious" is consistent with our decision in Chay-Velasquez v. Ashcroft, 367 F.3d 751, 755-56 (8th Cir. 2004). The IJ conducted its evaluation of the serious nonpolitical crime issue on a case-by-case basis, considering the facts and circumstances presented. Herrera-Elias admitted that he knowingly transported drugs and guns for the MS-13 gangsters on

multiple occasions -- at least once for pay because he was "trying to fit in." Substantial evidence on the record as a whole, which is our deferential standard of review, supports the decision even though one member of the BIA panel would have decided the serious nonpolitical crime issue differently.

Herrera-Elias's belated attempt to import the longstanding dispute over duress as a defense to the persecutor bar into this serious-nonpolitical-crime bar case is without merit. The elements of the two bars are different, and Herrera-Elias offers no analysis of how duress is relevant to this bar. The Attorney General in <u>Matter of Negusie</u> concluded that duress is not relevant to the persecutor bar *if the alien is determined to have assisted or participated in persecution.* 28 I&N Dec. 120, 155 (A.G. 2020). If the BIA applied a comparable analysis to this bar, the Attorney General's conclusion would not decide the initial question whether childhood duress and coercion are relevant to determining, "on a case-by-case basis considering the facts and circumstances presented," whether there are serious reasons for believing that the alien committed a serious nonpolitical crime outside the United States. <u>Barahona</u>, 993 F.3d at 1028 (quotation omitted). An affirmative answer to that question is what precludes asylum and withholding of removal under 8 U.S.C. § 1231(b)(3)(B)(iii). The BIA took no position on this question, and neither do we. We simply conclude the BIA did not err in rejecting the vague, unsupported "duress" argument Herrera-Elias presented to the agency.

For these reasons, we deny the petition for review.

_____