**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1607**

FRANCOIS PIERRE LUKUNKU-TSHIBANGU,

        Petitioner,

    v.

LORETTA E. LYNCH, Attorney General,

        Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued:  March 22, 2016          Decided:  June 15, 2016

Before KING, AGEE, and FLOYD, Circuit Judges.

Petition denied by unpublished per curiam opinion.

**ARGUED**: Mariam Masumi, JOHNSON AND ASSOCIATES, P.C., Arlington, Virginia, for Petitioner.  Andrea Gevas, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF**: Randall L. Johnson, JOHNSON AND ASSOCIATES, P.C., Arlington, Virginia, for Petitioner.  Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, John S. Hogan, Assistant Director, Mona Maria Yousif, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Francois Lukunku-Tshibangu, a citizen of the Democratic Republic of Congo (DRC), petitions for review of an order of the Board of Immigration Appeals (BIA) denying his application for protection under the Convention Against Torture (CAT). Lukunku-Tshibangu claims that if he is returned to the DRC, he will likely be tortured by the Congolese armed forces. Because substantial evidence supports the BIA's decision, we deny Lukunku-Tshibangu's petition.


I.

Lukunku-Tshibangu entered the United States at Washington Dulles International Airport on November 6, 2010. On December 1, 2010, the Department of Homeland Security issued a Notice to Appear charging Lukunku-Tshibangu with removability for entering the country without valid entry documents. See 8 U.S.C. § 1182(a)(7)(A)(i)(I). After an immigration judge (IJ) found him removable, Lukunku-Tshibangu filed a petition for asylum, withholding of removal, and CAT protection. At his merits hearing on June 29, 2011, Lukunku-Tshibangu, appearing pro se, testified to the following.

Before coming to the United States, Lukunku-Tshibangu was a member of the Congolese armed forces, known as the FARDC. He joined the FARDC as a "volunteer" in 2000 after his parents died

2

in the mid-1990s during the DRC's civil war. He was given the title "major," but had no supervisory authority, received no specific training, and was not issued any military identification. See J.A. 467. Over the next ten years, Lukunku-Tshibangu performed traffic control at the Congolese border, inspecting crossing vehicles for weapons. He carried a pistol, occasionally wore a uniform, and received a salary. However, Lukunku-Tshibangu explained that he was "in and out" of the army during this time. J.A. 468; id. at 467 ("Army there is not the way it is here, so sometimes I was with them, sometimes not."). In particular, he left the FARDC in 2007 for approximately three years to live abroad playing soccer. When he returned to the DRC in 2009, Lukunku-Tshibangu resumed his traffic control duties.

In 2010, Lukunku-Tshibangu was selected to travel to the United States with a delegation of nine other DRC army officials to attend an anti-terrorism training conference. The DRC and United States governments arranged for his ticket and visa. Lukunku-Tshibangu did not know why he was chosen to be part of the delegation, but suggested that it might have been because he worked at the Congolese border and got along well with others. When he arrived in the United States, Lukunku-Tshibangu informed immigration officials that he did not wish to return to the DRC. He was then detained pending proceedings before the IJ. During

3

his detention, Lukunku-Tshibangu met with Alain Kelenga, a representative from the DRC embassy, and informed Kelenga that he intended to seek asylum in the United States.

Lukunku-Tshibangu testified that he feared returning to the DRC for two reasons. First, he feared that his FARDC superiors would punish him for failing to attend the anti-terrorism training, which they would consider disobedience and possibly opposition to the government. Second, he feared that fellow FARDC soldiers would harm him out of jealousy that he was selected to attend the training and anger that he did not do so.

When asked whether the FARDC would perceive his failure to attend the training as dissidence, Lukunku-Tshibangu repeatedly stated that he did not know. See, e.g., J.A. 486 ("I have no idea because I cannot think [in] their place."). Similarly, when asked what he believed would happen to him if he returned to the DRC, Lukunku-Tshibangu stated that he "ha[d] no idea what would happen" but that he would "just enter the same suffering." J.A. 471. He explained that by "suffering," he meant "the suffering that [he] underwent during the war" as well as "when you are working . . . hard, [and] you're not paid well. That's a suffering too."[1] J.A. 473, 484. Lukunku-Tshibangu confirmed

---

[1] The DRC's civil war ended in 2003, approximately seven years before Lukunku-Tshibangu arrived in the United States. See J.A. 575-76.

4

that he had never been arrested or imprisoned by the Congolese government or subjected to any harm other than the "suffering" he described. He further confirmed that he knew of no other officers who had been punished after failing to complete a mission because they were perceived as opposing the government.

The IJ denied Lukunku-Tshibangu's applications for asylum and withholding of removal but granted him protection under the CAT, finding that his credible testimony, along with the State Department's 2011 Human Rights Report on the DRC (the "Human Rights Report"), established that Lukunku-Tshibangu would likely be tortured if returned to the DRC. See J.A. 368. The BIA upheld the IJ's denial of asylum and withholding of removal but, upon de novo review, reversed the IJ's grant of CAT protection.

Lukunku-Tshibangu petitioned this Court for review of the BIA's decision. Pursuant to the parties' motions, we remanded the case for reconsideration in light of our intervening decision in Turkson v. Holder, 667 F.3d 523 (4th Cir. 2012), which held that an IJ's determination regarding a petitioner's likely future mistreatment is a factual determination that the BIA must review for clear error rather than de novo. See Lukunku-Tshibangu v. Holder, No. 12-1002 (4th Cir. May 1, 2012). The BIA then remanded the case to the IJ to make specific findings as to the treatment Lukunku-Tshibangu would likely face

if removed to the DRC and to further consider his eligibility for asylum and withholding of removal.

On remand, the IJ again determined that Lukunku-Tshibangu was ineligible for asylum or withholding of removal but that he qualified for protection under the CAT. The IJ found that if Lukunku-Tshibangu were returned to the DRC, the FARDC would likely be able to locate him because of his "substantial past connection with the FARDC, his failure to follow their orders, and the army's extensive presence in the [DRC]." J.A. 83. The IJ further found that the FARDC likely knew of Lukunku-Tshibangu's absence from the training, viewed him as a dissident, and intended to apprehend him upon his return to the DRC. The IJ noted that, according to the Human Rights Report, the FARDC engages in arbitrary violence and killing of civilians and specifically targets perceived opponents. Thus, the IJ concluded, the FARDC would likely torture or kill Lukunku-Tshibangu or imprison him, which would itself constitute torture because of the deplorable conditions in Congolese prisons. Finally, the IJ found that Lukunku-Tshibangu's fellow soldiers were likely "enraged" by his failure to take advantage of the privilege of attending the anti-terrorism training and would likely torture him for his disloyalty, as FARDC soldiers "operate with impunity, torturing and killing people

arbitrarily, especially those who are suspected of dissent." J.A. 84.

On appeal, the BIA found that the IJ clearly erred in determining that Lukunku-Tshibangu would likely be tortured if returned to the DRC, and denied Lukunku-Tshibangu's application for CAT protection. Lukunku-Tshibangu seeks review of the BIA's decision.[2]

## II.

To qualify for protection under the CAT, an applicant bears the burden of proving that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Torture is "an extreme form of cruel and inhuman treatment" that is "intentionally inflicted on a person" by or with the consent of a public official. Id. § 1208.18(a)(1)-(2).

When an application for CAT protection rests on a "hypothetical chain of events," the applicant must show that each link in the chain is more likely than not to occur, as "[i]t is the likelihood of all necessary events coming together that must more likely than not lead to torture, and a chain of

---

[2] Lukunku-Tshibangu does not appeal the denial of his applications for asylum and withholding of removal.

7

events cannot be more likely than its least likely link." In re J.F.F., 23 I. & N. Dec. 912, 918 & n.4 (A.G. 2006). In assessing whether an applicant has met this burden, "all evidence relevant to the possibility of future torture shall be considered," including evidence of past torture, evidence of "gross, flagrant or mass violations of human rights" and other country conditions, and whether the applicant could relocate to a part of the country where he or she is not likely to be tortured. 8 C.F.R. § 1208.16(c)(3).

We review the BIA's decision to deny CAT relief for substantial evidence. Suarez-Valenzuela v. Holder, 714 F.3d 241, 245 (4th Cir. 2013). "Under this standard, 'administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Id. (quoting 8 U.S.C. § 1252(b)(4)(B)). "We will reverse the BIA's decision only if 'the evidence . . . presented was so compelling that no reasonable factfinder could fail to find'" the elements required for CAT protection. Id. (quoting INS v. Elias-Zacarias, 502 U.S. 478, 483–84 (1992)).

III.

A.

Lukunku-Tshibangu contends that if he is removed to the DRC, his FARDC superiors will torture him as punishment for his

8

failure to attend the anti-terrorism training. This hypothetical chain of events requires, among other things, that his FARDC superiors will (1) become aware of his return to the DRC, (2) view his absence from the training as disobedience or opposition, and (3) torture him. A reasonable fact-finder could find that Lukunku-Tshibangu has not shown that these events are more likely than not to occur.

As the BIA observed, the evidence does not establish that the FARDC would recognize and identify Lukunku-Tshibangu upon his return to the DRC. Lukunku-Tshibangu did not have a leadership or even supervisory position within the FARDC. He also had no military identification, only occasionally wore a uniform, and left the FARDC for nearly three years while playing soccer abroad. Furthermore, there is no evidence that the people with whom Lukunku-Tshibangu previously worked, and who might be able to recognize him, continue to work for the FARDC, or that their presence in the DRC is so ubiquitous that they would likely intercept Lukunku-Tshibangu regardless of where he entered the country. Finally, Lukunku-Tshibangu has been in the United States for over five years and there is no evidence that FARDC members have attempted to contact him, undermining the IJ's finding that the FARDC is anticipating Lukunku-Tshibangu's return and intending to apprehend him.

The evidence also does not establish that the FARDC would view Lukunku-Tshibangu's absence from the anti-terrorism training as disobedience or dissidence. When asked why he could not simply inform his government that he was detained by United States immigration officials and therefore prevented from attending the training, Lukunku-Tshibangu did not offer an explanation but instead stated that "even if I told them I will just enter the same suffering," referring to his previous war-time hardships and low working wages.[3] J.A. 471. Furthermore, Lukunku-Tshibangu's testimony indicates that attendance in the FARDC is less formal than army participation in other countries. He explained that he was "in and out [of] the army," J.A. 468, that the "[a]rmy there is not the way it is here, so sometimes I was with them, sometimes not," J.A. 467, and that he had previously left the FARDC for nearly three years without repercussion. Contrary to the IJ's findings, the evidence does not show that the FARDC would view Lukunku-Tshibangu's absence from the training as "blatant[] disobe[dience]." J.A. 84.

There is even less support for the proposition that the FARDC would view Lukunku-Tshibangu as a dissident. The IJ asked numerous times whether his absence from the training would be

---

[3] Notably, Lukunku-Tshibangu did not suggest that Alain Kelenga would have conveyed to the FARDC that Lukunku-Tshibangu was seeking asylum in the United States.

10

perceived as opposition to the government, to which Lukunku-Tshibangu replied "I don't know;" "[t]hey can think any way they want to;" and "I have no idea because I cannot think [in] their place." J.A. 485-86. Similarly, when asked whether any other officers had been punished as dissidents after failing to complete a mission abroad, Lukunku-Tshibangu replied, "I don't know. I really don't know about others." J.A. 486.

Finally, the evidence does not demonstrate that Lukunku-Tshibangu faces harm that amounts to torture upon his return to the DRC. When asked what he believed would happen to him if he returned, Lukunku-Tshibangu replied, "I have no idea what would happen, but anyway [I] wanted to . . . leave the country after my parents died. All I did there was [] survive." J.A. 471. At no point did he articulate fear of "cruel and inhuman treatment;" instead, he repeatedly stated that he wanted to escape the "suffering" in the DRC such as poor wages. The IJ's primary basis for finding a likelihood of torture was the Human Rights Report, which described state security forces as arbitrarily killing and detaining civilians and specifically targeting those suspected of disloyalty. However, generalized violence toward citizens does not establish an individual's eligibility for CAT protection. See, e.g., Lizama v. Holder, 629 F.3d 440, 449 (4th Cir. 2011) (upholding denial of CAT protection where applicant "failed to establish he would be

11

targeted by gangs more than any other citizens"); Singh v. Holder, 699 F.3d 321, 334-35 & n.16 (4th Cir. 2012) (upholding denial of CAT protection where country reports identified widespread abuse but did not show that petitioner himself would more likely than not be tortured). And, as discussed above, the evidence does not establish that Lukunku-Tshibangu would be viewed as a dissident.[4]

On appeal, Lukunku-Tshibangu does not point to record evidence that compels finding that he qualifies for CAT relief. Instead, he asks the Court to re-weigh the evidence and draw inferences in his favor. He argues, for example, that "it [is] reasonable to find that his former supervisors and fellow soldiers would recall who he is" because he resumed his military duties after playing soccer and because "[n]ot having an I.D. or wearing a uniform does not take away from Mr. Lukunku-Tshibangu's actual activities with the army." Pet'r's Br. 14-15. Similarly, he asks the Court to infer that the FARDC likely views him as a dissident because "[i]f [he] is viewed as one who disobeyed, it leads one to conclude that he went against the orders . . . because he disagreed with them." Id. at 17. However, "our task is not to reweigh the evidence and determine

_____

    [4] Because Lukunku-Tshibangu has not shown that he would be found and punished upon his return to the DRC, we need not address whether detention in a DRC prison constitutes torture.

12

which of the competing views is more compelling.  It is instead to ensure that substantial evidence supports the BIA's judgment."  Gonahasa v. I.N.S., 181 F.3d 538, 542 (4th Cir. 1999).  For the reasons discussed above, we find that substantial evidence supports the BIA's judgment here.


                                    B.

    Lukunku-Tshibangu also contends that fellow FARDC soldiers will torture him out of jealousy that he was chosen to attend the training in the United States and anger that he failed to do so.  The evidence does not compel such a finding.  Lukunku-Tshibangu's evidence on this point amounts to his assertion that he would be harmed because "it could be always jealously because when you get here, you know, it becomes also [about] jealousy."  J.A. 474.  However, Lukunku-Tshibangu does not specifically identify any soldiers who would want to harm him or suggest that he or other delegates were threatened by jealous soldiers when they were first selected to come to the United States.  Instead, Lukunku-Tshibangu simply speculates that unidentified soldiers with whom he worked five years ago continue to harbor significant ill-will toward him and will be able to find and torture him upon his return.  The evidence does not support such suppositions.


                                    13

IV.

The record does not compel us to find that Lukunku-Tshibangu will more likely than not be tortured if removed to the DRC. Accordingly, we conclude that substantial evidence supports the BIA's denial of CAT protection and deny Lukunku-Tshibangu's petition for review.

PETITION DENIED

14