**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 22-1032**

───────────────

ANTHONY KEMMOY WHYTE,

       Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

       Respondent.

------------------------------

LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INCORPORATED; IMMIGRATION EQUALITY; IMMIGRANT JUSTICE CENTER; BRONX DEFENDERS; IMMIGRANT LEGAL DEFENSE; SAN FRANCISCO PUBLIC DEFENDER'S OFFICE; CAPITAL AREA IMMIGRANTS' RIGHTS COALITION,

       Amici Supporting Petitioner.

───────────────

On Petition for Review of an Order of the Board of Immigration Appeals.

───────────────

Argued:  March 9, 2023                         Decided:  April 26, 2023

───────────────

Before WILKINSON, AGEE, and HEYTENS, Circuit Judges.

───────────────

Petition denied by unpublished opinion. Judge Wilkinson wrote the opinion, in which Judge Agee and Judge Heytens joined.

**ARGUED:** Amber Nasir Qureshi, Victoria Frances Neilson, NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD, Washington, D.C., for Petitioner. Jeffrey Michael Hartman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Joseph Meyers, NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD, Washington, D.C.; David C. Drake, DRAKE IMMIGRATION LAW, PLLC, Alexandria, Virginia; Joseph Alexander Brophy, BROPHY LENAHAN LAW GROUP, P.C., Havertown, Pennsylvania, for Petitioner. Brian Boynton, Principal Deputy Assistant Attorney General, Melissa Neiman-Kelting, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. Jennifer C. Pizer, LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC., Los Angeles, California; Bridget A. Crawford, IMMIGRATION EQUALITY, Brooklyn, New York; Michael J. Mestitz, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Amici Lambda Legal Defense and Education Fund, Inc. and Immigration Equality. Elizabeth Schmelzel, Eleni R. Bakst, Lorna Julien, CAPITAL AREA IMMIGRANTS' RIGHTS (CAIR) COALITION, Washington, D.C., for Amicus Capital Area Immigrants' Rights (CAIR) Coalition. Tania Linares Garcia, Mary Georgevich, NATIONAL IMMIGRANT JUSTICE CENTER, Chicago, Illinois, for Amici National Immigrant Justice Center, Bronx Defenders, Immigrant Legal Defense, and the San Francisco Public Defender's Office.

---

Unpublished opinions are not binding precedent in this circuit.

WILKINSON, Circuit Judge:

Anthony Whyte, a citizen of Jamaica, was accused of molesting a young boy while he was a pastor in Jamaica. Whyte denies these allegations and claims that reports of the accusations made him fear for his life, so he fled to the United States. Jamaican law enforcement authorities issued two arrest warrants for Whyte, claiming he committed the crimes of "buggery" and "indecent assault" on an under-age boy. The International Criminal Police Organization (INTERPOL) also circulated a Red Notice to locate Whyte and return him to Jamaica. Whyte was then detained in the United States.

During his removal proceedings, Whyte argued that he should not be returned to Jamaica for two reasons: First, he should be permitted to pursue his application for asylum and withholding of removal because he did not commit a serious nonpolitical crime, and second, the Convention Against Torture (CAT) barred his removal because he would be tortured in Jamaica given the country's pervasive hostility toward gay individuals like himself. The Immigration Judge (IJ) ruled against him on both counts. The Board of Immigration Appeals (BIA) affirmed the IJ's findings. Whyte now petitions this court for review, seeking to reverse the BIA's determinations on whether he committed a serious nonpolitical crime and whether the CAT bars his removal. Finding no error in the BIA's decision, we deny the petition.

I.

A.

Anthony Whyte, a Jamaican citizen, previously served as a pastor for a Seventh-Day Adventist church in Jamaica. Whyte is a gay man who kept his sexuality secret for

3

fear of anti-gay hostility in Jamaica. In January 2020, a young boy named J.R. came forward with allegations of sexual assault against Whyte. The boy and his family were parishioners at the church where Whyte had served as a pastor. J.R. told his mother, Marie Richards, that Whyte had kissed him in 2017 and sexually assaulted him in 2018.

Whyte tells a different story. He claims that "he did not know that [J.R.] was a minor when he first met him." Administrative Record (A.R.) 116. Whyte met J.R. through his church, and they grew close as Whyte formed a relationship with the Richards family. Whyte claims that J.R. and his brother would spend nights at Whyte's home, and Whyte began to suspect that J.R. was also gay. During one of those visits, Whyte asserts that J.R. made advances on him, which Whyte rejected. Whyte believed J.R. was 18 at the time.

After J.R. told his mother Marie about the sexual assault, Whyte met with Marie in January 2020 to deny the allegations. Whyte claims Marie and the Richards family then attempted to extort him, demanding money or else they would make public the accusations against him. The Richards family then ostensibly began to threaten his life. Whyte claims that J.R.'s father, Morris, sent men to Whyte's home to kill him. According to Whyte, his neighbor informed him that a group of men had gathered outside Whyte's home. Later that day, Whyte fled to a hotel room and booked a flight to Baltimore, Maryland. He came to the United States on a nonimmigrant visa on January 11, 2020. He eventually resigned from the church.

A Jamaican newspaper, the *Jamaica Observer*, published four articles in March 2020 describing the accusations against Whyte. One article, entitled "Pervert Pastor!," accused an unnamed pastor of sexually assaulting a 13-year-old boy. The other articles

4

repeated this allegation. Though the articles did not identify Whyte by name, he claims he began receiving hundreds of death threats on social media and messaging apps.

On March 9, 2020, the Jamaican police obtained two arrest warrants for Whyte, one for "bugger[y]," the crime of engaging in anal sex, and one for "indecent[] assault." A.R. 365–66. This led INTERPOL to issue a Red Notice on March 16, 2020. The INTERPOL Red Notice, which is a request to law enforcement worldwide to help locate a wanted person, sought Whyte's "provisional arrest" and extradition back to Jamaica. A.R. 587–88. Whyte was already in the United States by this time. In response to the Red Notice and arrest warrants, Whyte's visa was revoked, and immigration authorities detained Whyte on March 25, 2021.

B.

The Department of Homeland Security initiated removal proceedings against Whyte. In response, Whyte applied for asylum, withholding of removal, and deferral of removal under the Convention Against Torture (CAT). In support of removal, DHS submitted two Jamaican arrest warrants against Whyte, a Form I-213 documenting the chain of custody for the arrest warrants, and an investigative report prepared by a detective of the Jamaican Constabulary Force, which functions as Jamaica's police department. Whyte objected to including this evidence, arguing that it was unreliable and untimely. The record also included the Red Notice and the *Jamaican Observer* articles.

The IJ held a hearing on the merits of Whyte's claims in June 2021. Though Whyte testified in a "generally credible manner," the IJ was not convinced that Whyte was "being truthful." A.R. 121–23. Specifically, the IJ found that Whyte's story that he was falsely

5

accused of molesting J.R. was not persuasive against the countervailing evidence "contained in the Red Notice which is corroborated by articles and by an arrest warrant." A.R. 123. The IJ found there were reasons to believe that Whyte committed a serious nonpolitical crime, namely sexual assault against a minor, thereby barring asylum and withholding of removal. The IJ also denied Whyte's deferral of removal under the CAT because Whyte had failed to show that he would likely be tortured in Jamaica. The IJ reasoned that Whyte "cannot establish eligibility for CAT protection by relying on mere speculation or stringing together a series of suppositions unless each step in the hypothetical chain of events would lead to his torture to be more likely than not to occur." A.R. 128.

Whyte appealed the IJ's ruling to the Board of Immigration Appeals. In January 2022, the BIA denied Whyte's appeal and affirmed the IJ's decision. Whyte filed a timely petition for review of the BIA's decision on January 8, 2022. On March 31, 2022, Whyte's final order of removal was executed, so Whyte has since been returned to Jamaica.

Whyte now challenges the BIA's decision, arguing that the BIA erred in concluding (1) that there were reasons to believe Whyte committed a serious nonpolitical crime, and (2) that Whyte was not entitled to deferral of removal under the CAT.

When the BIA "affirms and adopts an IJ's decision and includes its own reasons for affirming," then we review both the BIA and IJ decisions. *Cabrera v. Garland*, 21 F.4th 878, 883 (4th Cir. 2022) (internal quotation marks omitted). We review the BIA's factual findings under the "substantial evidence standard," *Quintero v. Garland*, 998 F.3d 612, 621 (4th Cir. 2021), and treat them as "conclusive unless any reasonable adjudicator would

6

be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B). We review the BIA's "legal conclusions de novo." *Quintero*, 998 F.3d at 621. Ultimately, "we are bound to uphold the BIA's determinations unless they are manifestly contrary to the law and an abuse of discretion." *Tassi v. Holder*, 660 F.3d 710, 719 (4th Cir. 2011).

II.

We first address the BIA's finding that Whyte committed a serious nonpolitical crime (SNPC), barring him from asylum and withholding of removal. The Immigration and Nationality Act (INA) renders an alien ineligible for asylum and withholding of removal if "there are serious reasons for believing that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States." 8 U.S.C. § 1158(b)(2)(A)(iii) (asylum); *id.* § 1231(b)(3)(B)(iii) (withholding of removal).

Once the government offers evidence showing serious reasons to believe Whyte committed a serious nonpolitical crime, the burden is on Whyte to show that the SNPC bar does not apply to him. 8 C.F.R. § 1240.8(d); 8 U.S.C. § 1229a(c)(4)(A)(i). In a similar context, the Supreme Court has instructed that "any lingering uncertainty" about whether the alien has met his burden is "enough to defeat his application for relief." *Pereida v. Wilkinson*, 141 S. Ct. 754, 761 (2021).

We first consider whether the agency proffered sufficient evidence establishing serious reasons to believe that Whyte committed a serious nonpolitical crime. We then address whether Whyte successfully showed the SNPC bar does not apply.

7

A.

Our sister circuits and the BIA have interpreted the INA's "serious reasons for believing" standard to be equivalent to probable cause. *See, e.g., Gonzalez-Castillo v. Garland*, 47 F.4th 971, 977 (9th Cir. 2022); *Barahona v. Garland*, 993 F.3d 1024, 1027 (8th Cir. 2021); *Guo Qi Wang v. Holder*, 583 F.3d 86, 90 (2d Cir. 2009); *Matter of E-A-*, 26 I. & N. Dec. 1, 3 (BIA 2012). Under this standard, a court need not find proof that the alien actually committed the alleged crime; it must only find that there is probable cause "for believing that the alien has committed a serious nonpolitical crime." 8 U.S.C. § 1158(b)(2)(A)(iii). Courts have found probable cause where the record contains such evidence as indictments, arrest warrants, Red Notices, and testimony from the parties involved. *See, e.g., Villalobos Sura v. Garland*, 8 F.4th 1161, 1167 (9th Cir. 2021).

The IJ and BIA here found probable cause to believe, based on the record before them, that Whyte committed a serious nonpolitical crime when he allegedly sexually assaulted a young boy. We hold that there was ample evidence in the record to support this conclusion, namely arrest warrants, an investigation letter, contemporaneous newspaper articles, and an INTERPOL Red Notice.

First, the agency relied on two arrest warrants, one asserting that Whyte did "bugger [J.R.] contrary to common law," A.R. 353, and another stating that Whyte "indecently assaulted [J.R.] contrary to Sec. 13 of the Sexual Offences Act." A.R. 354. The Form I-213 introduced by DHS traced the chain of custody of these arrest warrants and confirmed they were "certified copies." A.R. 360.

8

Second, the agency considered the investigatory letter written by a detective within Jamaica's constabulary force, which is responsible for "community policing, special response, intelligence gathering, and internal affairs." A.R. 551. This letter recounted that "whilst the suspect was the Pastor of an Adventist Church," he "buggered [a] twelve year[] old boy." A.R. 352.

Third, the record contained four articles from the *Jamaica Observer* that described the alleged crimes. Each article accused a pastor within Whyte's parish of sexually assaulting a teenage boy. *See* A.R. 667–73. These articles did not name Whyte, but he conceded that individuals "were able to easily deduce that [he] was the one being referred to just based on the descriptions of the places [] and the timeframe." A.R. 614.

Last, the agency relied on the INTERPOL Red Notice alleging that Whyte committed "Buggery" and "Indecent Assault" against a "12 year old boy" "while the suspect was the Pastor of an Adventist Church" in Jamaica. A.R. 587–88. The Red Notice included INTERPOL's official seal, Whyte's photograph, biographical information, and a summary of the facts leading to the charge. Other circuits have noted that a Red Notice on its own is not dispositive. *See Barahona*, 993 F.3d at 1028; *Gonzalez-Castillo*, 47 F.4th at 977. When a Red Notice is accompanied by other evidence, however, the agency does not err in relying on it alongside corroborating documents. *See Villalobos Sura*, 8 F.4th at 1168 (finding Red Notice, arrest warrant, and testimony sufficient).

The record shows there was no error here. We have held that evidence relied on by the IJ and BIA must contain "sufficient indicia of reliability and trustworthiness to support its use." *Anim v. Mukasey*, 535 F.3d 243, 256 (4th Cir. 2008). Though Whyte contests the

9

accuracy of the evidence against him because it clashes with his story, each piece of evidence contained sufficient indicia of reliability for the IJ and BIA to trust its use. Both the IJ and BIA found the evidence in its totality established a consistent story: Whyte sexually assaulted a young boy while he was a pastor in Jamaica. Taken as a whole, therefore, the evidence establishes probable cause that Whyte committed a serious nonpolitical crime.

B.

Because "the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply," Whyte has "the burden of proving by a preponderance of the evidence that such grounds do not apply." 8 C.F.R. § 1240.8(d). Whyte attempts to meet his burden by essentially challenging the sufficiency of the evidence against him. While Whyte asserts he was extorted and falsely accused by the Richards family, the IJ found that there was probable cause to believe Whyte sexually assaulted a young boy.

The IJ's resolution of these conflicting versions of events is not a determination we can upset on review. Our "task at this juncture is not to reweigh the evidence and determine which of the competing views is more compelling." *Mulyani v. Holder*, 771 F.3d 190, 200 (4th Cir. 2014) (internal quotation marks omitted). If "the record contains contrary evidence of a kind and quality that a reasonable factfinder could find sufficient, a reviewing court may not overturn the agency's factual determination." *Garland v. Ming Dai*, 141 S. Ct. 1669, 1677 (2021) (internal quotation marks omitted). In weighing the competing narratives, the IJ considered Whyte's credibility against the strength of the surrounding

10

evidence. "[W]here the record plausibly could support two results: the one the IJ chose and the one the petitioner advances, reversal is only appropriate where the court finds that the evidence not only supports the opposite conclusion, but *compels* it." *Niang v. Gonzales*, 492 F.3d 505, 511 (4th Cir. 2007) (internal quotation marks omitted).

Given the evidence discussed above and that Whyte's chief objection to that evidence is that his side of the story should be believed, we find nothing that compels us to overturn the ruling below. As we see no merit in any of the remaining assignments of error on this issue, we shall uphold the BIA's ruling.

### III.

We turn to Whyte's final claim that the agency erred in its determination that he was ineligible for deferral of removal under the Convention Against Torture (CAT).

### A.

Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment provides that parties agree not to deport "a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." *Turkson v. Holder*, 667 F.3d 523, 525 (4th Cir. 2012) (internal quotation marks omitted). Torture is defined as (1) "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person" in a manner that is (2) by, or "with the consent or acquiescence of, a public official." 8 C.F.R. § 1208.18(a)(1) (2012); *Herrera-Martinez v. Garland*, 22 F.4th 173, 185 (4th Cir. 2022).

An alien seeking relief under the Convention therefore has the burden to show that first "it is more likely than not that he will be tortured if removed" and second that "this

torture will occur at the hands of government or with the consent or acquiescence of government." *Moreno-Osorio v. Garland*, 2 F.4th 245, 256 (4th Cir. 2021) (internal quotation marks omitted). Importantly, "judicial review of factual challenges to CAT orders . . . is highly deferential." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020).

B.

The Board determined that Whyte failed to offer evidence that the Jamaican government will torture him. We agree for the following reasons. First, Whyte neglects to name any public officials who will likely torture him. Instead, he testifies generally that he was extorted by police in 2016 when they found him kissing another man. A.R. 276–79. This falls short of a showing that the police, much less any specific officers, will torture him. Whyte further contends that Jamaica uses its "buggery" laws to sanction violence against homosexual men, but this too falls short. Reports from the Department of State show that Jamaica enforces its buggery laws only "in cases of sexual assault and child molestation," A.R. 125–26, which is consistent with the charges here. *See* 8 C.F.R. § 1208.16(c)(3)(iv) (allowing for consideration of "[o]ther relevant information regarding conditions in the country of removal"). In short, Whyte offers no non-speculative evidence that he will be tortured by government officials.

Whyte must therefore rely on an acquiescence theory to demonstrate likely torture. Public officials acquiesce to torture when, "prior to the activity constituting torture, [they] have awareness of such activity and thereafter breach [their] legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7). "Such awareness requires a finding of either actual knowledge or willful blindness," which "means that the public

12

official acting in an official capacity . . . was aware of a high probability of activity constituting torture and deliberately avoided learning the truth." 8 C.F.R. § 1208.18(a)(7); *see also Moreno-Osorio*, 2 F.4th at 256.

Whyte fails to offer sufficient evidence here. He claims that he witnessed two gay men in his community beaten and stabbed when he was a child, that his life is in danger from people on social media and the mob that gathered at his home, and that Jamaican officials will turn a blind eye to any harm that results from these threats because of pervasive anti-gay sentiment in Jamaica. Yet Whyte's testimony neither rises to the level of a likelihood of torture at the hands of private individuals nor to the level of showing that the government will acquiesce.

Despite the alleged threats on social media and messaging apps from unknown individuals and the purported mob outside his home, Whyte could not point to any specific instances of harm that he may face, nor could he name any particular individuals or groups who might harm him. *See Lukunku-Tshibangu v. Lynch*, 652 F. App'x 180, 185 (4th Cir. 2016) (explaining that failure to "specifically identify" those "who would want to harm him" weighs against contention that he would be tortured); *see also Valle v. Garland*, No. 20-1753, 2022 WL 621784, at *4 (4th Cir. Mar. 3, 2022).

Whyte also does not present any evidence that he was tortured in the past. 8 C.F.R. § 1208.16(c)(3)(i) ("Evidence of past torture inflicted upon the applicant" is relevant to whether applicant will be tortured in the future). His claims of likely torture thus amount to "predictions" about what will happen in the future, which we have held are factual determinations that we leave undisturbed absent clear error. *Turkson*, 667 F.3d at 529; *see*

13

*also Cruz-Quintanilla v. Whitaker*, 914 F.3d 884, 890 (4th Cir. 2019) (holding that "a prediction as to 'what would likely happen' to the noncitizen if removed" is "a purely factual determination"). The IJ and BIA did not commit clear error in its findings here.

Last, though Whyte presents disturbing evidence of gay people being mistreated in Jamaica, he fails to link this general assertion to his individual circumstances. The data about Jamaica's regrettable hostility toward homosexuals is certainly relevant background information, *see* 8 C.F.R. § 1208.16(c)(3)(iii), but it does not show that Whyte "would be singled out for torture," *Kerr v. Garland*, No. 21-2074, slip op. at 16 (4th Cir. April 24, 2023). Information about the overall atmosphere in Jamaica, moreover, falls short of revealing "actual knowledge or willful blindness" on behalf of Jamaican officials who would allegedly acquiesce in Whyte's torture. 8 C.F.R. § 1208.18(a)(7). Actual knowledge or willful blindness requires a level of specificity about the sources of torture and the reaction of those in authority in response to them that is simply lacking in this record. In sum, the BIA did not err in finding that Whyte failed to show it was more likely than not that he would be tortured if returned to Jamaica.

## IV.

For the foregoing reasons, the petition is denied.

*DENIED*